# United States Court of Appeals
## For the First Circuit

No. 07-2233

TIENG SOK,

Petitioner,

v.

MICHAEL B. MUKASEY, ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, <u>Chief Judge</u>,
Selya and Howard, <u>Circuit Judges</u>.

<u>Vanthan R. Un</u> on brief for petitioner.
<u>Brendan P. Hogan</u>, Trial Attorney, Office of Immigration
Litigation, <u>Gregory G. Katsas</u>, Acting Assistant Attorney General,
Civil Division, and <u>Michelle Gorden Latour</u>, Assistant Director,
Office of Immigration Litigation, U.S. Department of Justice, on
brief for respondent.

September 10, 2008

**LYNCH**, **Chief Judge**. Tieng Sok, a native and citizen of Cambodia, petitions for review of a decision by the Board of Immigration Appeals ("BIA") denying her application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We deny the petition for review.

## I.

Sok entered the United States on March 28, 2003, as a non-immigrant visitor for pleasure. She was authorized to remain in the United States through September 27, 2003, but overstayed. On April 13, 2004, the Department of Homeland Security initiated removal proceedings against Sok. Through counsel, Sok conceded her removability, but applied for asylum, withholding of removal, and protection under the CAT. A hearing was held before an Immigration Judge ("IJ") on March 17, 2006.

We recount her testimony, cutting to its essence. Sok testified that she was 52 years old, a widow with one child, and that she had suffered persecution in Cambodia on account of her political activity. She and her husband sold shoes in a market in Phnom Penh. In 1995, she became involved with the Khmer Nation Party ("KNP"), campaigning and collecting donations on its behalf. A member of the rival Cambodian People's Party ("CPP") threatened her for this, saying that "someday [her] life would be in danger."

In 1997, Sok and her husband fled from Phnom Penh during a coup. She testified that when they returned to the city, they

-2-

found their shop had been vandalized.  Sok believed this was in retaliation for supporting the KNP.[1]

Sok testified that in 1998 she became an active member of the Sam Rainsy Party ("SRP"), which was challenging the CPP in an upcoming election.  After the CPP won the election, Sok and her husband participated in a demonstration calling on Hun Sen, the CPP's leader, to step down.  Sok saw police beat and arrest her husband.  She was struck with a rifle butt and fell to the ground, but managed to escape and run home.

Some time after that, a government official came to Sok's home and questioned her about her involvement in the protest.  He told her she must cease her support for the SRP.  In another incident, Sok said she and her husband were followed by two men on a motorcycle.  The men fired shots, but Sok and her husband managed to escape without injuries.

On November 17, 2002, Sok's husband was struck by a car and died.  A friend who witnessed the accident told her the car belonged to the CPP and that it hit Sok's husband from behind.  Sok believed her husband was killed for being active in the SRP.  She testified that twice thereafter she was threatened by police and warned not to make any report or to blame the CPP for her husband's death.  Sok also said she fears if she returned to Cambodia, she

---

[1]    In the affidavit accompanying her asylum application, Sok stated that a security guard at the market told her "this was a consequence for anyone who was not a member of the CPP."

would be killed because of her connection to her husband.

The IJ determined that Sok had not met her burden of proof required to establish eligibility for asylum, withholding of removal, or protection under the CAT. While he did not find Sok non-credible, he characterized her testimony as "lost," "confused, superficial, hesitant and inconsistent." Specifically, the IJ was troubled by Sok's "halting" responses to questions about the demonstration in which Sok and her husband were injured and Sok's inability to answer questions on this subject without prompting from her lawyer. The IJ concluded that Sok "simply did not know what the basis of her political asylum claim was until she was refreshed." Beyond this, he found the details surrounding the death of Sok's husband to be "very flimsy, at best." It is not believable, he said, that the police would bring Sok in to tell her "not to make a report with respect to an accident that she didn't even witness."

Even though he assumed that most of the events described by Sok took place, and examined Sok's testimony "in the best possible light," the IJ concluded that Sok had failed to carry her burden of proof on any of her claims. The IJ rejected Sok's claims and granted her voluntary departure.

The BIA rejected Sok's appeal on July 12, 2007. It noted the "numerous examples of . . . deficiencies" identified by the IJ in Sok's testimony and determined that the IJ had properly

-4-

concluded that Sok failed to meet her burden of proof. The BIA stated that "although testimony may in some cases be the only evidence available to prove an asylum applicant's claim, it must be believable, consistent, and sufficiently detailed." It concluded that her testimony did not meet this standard. Sok also argued to the BIA that her due process rights were violated because purported translation problems during the hearing caused her testimony to appear deficient. The BIA rejected this claim. It pointed out that Sok did not complain about the interpreter during the hearing and found that she had failed to show how any alleged inadequacies would have affected the outcome of the proceedings. Sok petitioned this court for review.

## II.

Sok argues that the denial of her claims was not supported by substantial evidence and that translation problems in the hearing before the IJ violated her right to due process. Both arguments lack merit.

A.      Substantial Evidence

We review the BIA's findings under the deferential substantial evidence standard. See, e.g., Kechichian v. Mukasey, No. 07-1584, ___ F.3d ___, 2008 WL 2814789, at *3 (1st Cir. July 23, 2008). We uphold the BIA's findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Sharari v. Gonzáles, 407 F.3d 467, 473

(1st Cir. 2005) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)) (internal quotation marks omitted). We reverse only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); see also, e.g., Chikkeur v. Mukasey, 514 F.3d 1381, 1382-83 (1st Cir. 2008). "When the BIA adopts the IJ's opinion and discusses some of the bases for the IJ's decision, we have authority to review both the IJ's and the BIA's opinions." Ouk v. Gonzales, 464 F.3d 108, 110 (1st Cir. 2006). Here, the findings of the IJ, adopted by the BIA, are supported by substantial evidence.

To qualify for asylum, an alien must demonstrate that she "suffered past persecution or has a well-founded fear of future persecution." Chikkeur, 514 F.3d at 1382 (citing 8 U.S.C. § 1101(a)(42)(A)). The IJ determined that Sok had not met this burden in showing past persecution. Sok established that she and her husband were beaten at a protest in 1998. But this alone does not rise to the level of persecution. See Palma-Mazariegos v. Gonzales, 428 F.3d 30, 37 (1st Cir. 2005) ("[P]ersecution requires more than a showing of either episodic violence or sporadic abuse."); Nelson v. INS, 232 F.3d 258, 263-64 (1st Cir. 2000) ("To qualify as persecution, a person's experience must rise above unpleasantness, harassment, and even basic suffering."). As for the death of Sok's husband, the BIA and IJ permissibly found the evidence presented by Sok was too vague to meet the burden of

-6-

proof.  See Aquilar-Solis v. INS, 168 F.3d 565, 571 (1st Cir. 1999).  They could reasonably conclude that even if the car that struck Sok's husband had been owned by the CPP, this did not establish that Sok's husband was purposefully killed for his political activity.[2]  The record does not compel a finding of past persecution.

Nor was it unreasonable for the IJ to conclude that Sok had failed to prove a well-founded fear of future persecution.  Sok claimed she fears she would be killed if she returned to Cambodia. But the record does not compel the conclusion that this fear is objectively reasonable.  See Nelson, 232 F.3d at 264-65.  The evidence the government had targeted her husband was not strong -- the connection between the government and the death of Sok's husband is far from clear.  The IJ could also reasonably conclude that the government would be unlikely to take action six years later against Sok.

Sok argues that the IJ failed to consider the evidence submitted on the nature of Cambodia's government in determining that Sok lacked a well-founded fear of future persecution.  But the IJ did not ignore this evidence.  He explicitly acknowledged "the harshness of the government in Cambodia" in his oral decision and

---

[2]    Similarly, absent more evidence the BIA and IJ were not compelled to conclude that the incident involving the two men on the motorcycle was connected to her political activity or to the government.

stated during the hearing that he had read and would consider the State Department Country Reports on Cambodia.  In his opinion, the IJ is not required to dissect every piece of evidence presented. See Pulisir v. Mukasey, 524 F.3d 302, 310 (1st Cir. 2008); Pan v. Gonzales, 489 F.3d 80, 87 (1st Cir. 2007).

The IJ also properly rejected Sok's claims for withholding of removal and protection under the CAT.  Sok failed to meet the burden of proof required to establish an asylum claim and therefore necessarily failed to meet the more stringent burden required for a withholding of removal.  See Makhoul v. Ashcroft, 387 F.3d 75, 82 (1st Cir. 2004); Khalil v. Ashcroft, 337 F.3d 50, 56 (1st Cir. 2003).  The CAT does not apply because Sok has not alleged that she has suffered any treatment that could constitute torture, see 8 C.F.R. § 208.18(a), nor has she established that it is more likely than not that she would be tortured if she returned to Cambodia, see 8 C.F.R. § 1208.16(c)(2).

The BIA's denial of Sok's claims for relief was supported by substantial evidence.

B.        Due Process

Sok argues that the BIA erred in rejecting her claim that a poor translation during her hearing was what caused her testimony to sound halting and unbelievable and that the IJ's failure to take this into account violated her due process rights.  This claim is weak, since no meaningful complaint about the interpreter was

raised during the hearing.[3] See Gishta v. Gonzales, 404 F.3d 972, 978 (6th Cir. 2005); see also Albathani v. INS, 318 F.3d 365, 375 (1st Cir. 2003). Moreover, Sok has not shown she was prejudiced by the alleged deficiency. See Lattab v. Ashcroft, 384 F.3d 8, 20-21 (1st Cir. 2004); see also Gishta, 404 F.3d at 979. The halting and confused nature of Sok's testimony gave the IJ pause as to the veracity of some of Sok's claims. But he ultimately made his determination while considering the evidence "in the best possible light for [Sok]." Even assuming that most of the events Sok described actually took place, the IJ concluded that Sok could not meet her evidentiary burden. Thus it is not clear how the alleged deficiency could have affected the outcome of the proceedings. Sok received a full and fair hearing.

## III.

The petition for review is denied.

---

[3] At one point, Sok's counsel raised the general contention that everything Sok said was filtered through translation, so it was impossible to know the exact words she was using. But this is unrelated to the deficiencies in Sok's testimony discussed by the IJ -- namely its vagueness and Sok's failure to discuss major bases of her claim without prompting from counsel.