# United States Court of Appeals
## For the First Circuit

---

No. 08-1291

EDUARDO MUÑOZ-MONSALVE,

Petitioner,

v.

MICHAEL B. MUKASEY, ATTORNEY GENERAL,

Respondent.

---

PETITION FOR REVIEW OF AN ORDER OF THE BOARD

OF IMMIGRATION APPEALS

---

Before

Lynch, Chief Judge,
Selya and Howard, Circuit Judges.

---

Walter J. Gleason on brief for petitioner.
Gregory G. Katsas Assistant Attorney General, Civil Division, Emily Anne Radford, Assistant Director, Office of Immigration Litigation, and Vanessa O. Lefort, Attorney, Office of Immigration Litigation, on brief for respondent.

---

December 12, 2008

---

**SELYA**, **Circuit Judge**.  The petitioner, Eduardo Muñoz-Monsalve, sees due process violations at every twist and turn.  We distill his wide-ranging array of arguments into three claims of error; namely: (i) that the immigration judge (IJ) failed to initiate a competency hearing: (ii) that the Board of Immigration Appeals (BIA) incorrectly affirmed the IJ's adverse credibility determination: and (iii) that the BIA adjudicated his administrative appeal despite a gap in the administrative record.[1]  Discerning no merit in any of these claims, we deny the instant petition for judicial review.

## I.  BACKGROUND

The facts, which we draw mainly from the IJ's decision and the exhibits referenced herein, are uncomplicated.

The petitioner is a native and citizen of Colombia.  He was apprehended while attempting to enter the United States, using his brother's passport, in October of 2001.  An immigration officer interviewed him at the point of entry — a Miami airport.  In a sworn statement given to this interviewer, the petitioner stated that his motivation for repairing to the United States was largely economic; he had been out of work in his native land and wanted a

---

[1] At various points in his brief, the petitioner seems to imply that he is contesting the agency's failure to grant withholding of removal and/or relief under the United Nations Convention Against Torture.  Because the petitioner has not set forth any developed argumentation anent these issues, we deem them waived.  See Nikijuluw v. Gonzales, 427 F.3d 115, 120 n.3 (1st Cir. 2005).  Thus, we make no further mention of either issue.

job.  As an apparent aside, he also mentioned some vaguely defined trouble with the National Liberation Army (ELN), a paramilitary guerilla group.  According to country reports admitted into evidence, the ELN exercised some significant control over parts of Colombia notwithstanding the Colombian government's efforts to curb the group's demonstrated penchant for violence.

Two days later, a different immigration officer conducted a so-called "credible fear" interview.  During that session, the petitioner denied having an affiliation with any political faction, describing the ELN's interactions with him as attempted extortion that came about after ELN members mined the records of the local Chamber of Commerce in search of deep-pocket prospects.

Immigration officials referred the matter to the immigration court.  Removal proceedings were instituted, and the petitioner cross-applied for asylum.

At a hearing held in November of 2005, the petitioner told a new and different story.  He explained that he had been a Liberal Party activist in Colombia from 1991 forward.  In that capacity, he had spent his weekends campaigning year after year for various Liberal Party candidates.  His duties included making speeches, handing out political t-shirts, counting votes, and monitoring elections. He testified that, on two occasions in 1991, ELN members directed him to curtail his political involvement and

ordered him to give them money.  He paid off his tormentors but did not forgo participation in partisan politics.

The petitioner further testified that his brother, a fellow Liberal Party member, was shot and killed in 1991.  The petitioner witnessed the slaying.  He asserted that his family subsequently received a letter from the ELN taking credit for the homicide and linking it to the family's political activism.

The petitioner's grisly tale did not end there.  He said that his brother-in-law was killed in 1993 — a killing that he also attributed to the ELN, citing his family's receipt of a letter to that effect.

Notwithstanding these alleged maraudings, the petitioner recounted that he remained in Colombia and persisted in his political activities.  In 2001, however, he claimed to have been shot twice during a confrontation with the ELN.  He complained to both the police and the army, but to no avail.  Shortly thereafter, he fled to the United States.

The IJ considered the petitioner's testimony, the country reports, and other documentary evidence.  He emphasized the stark contrast between the petitioner's hearing testimony and the petitioner's earlier statements as well as the utter absence of any extrinsic evidence corroborating either the petitioner's political involvement or any politically-based problems with the ELN.  On

that basis, the IJ found the petitioner's testimony incredible, denied his request for asylum, and ordered his removal.

The petitioner's attempt to appeal to the BIA was at first stymied because the administrative record had disappeared. When the record was located, the petitioner claimed that it was incomplete inasmuch as it did not contain the transcript of a master calendar conference, held on a date not specified by the petitioner, at which he purportedly appeared with a high fever and handed the IJ notes from the emergency room records of a local hospital. The petitioner described this conference as "brief" and acknowledged that the only business transacted was the rescheduling of the merits hearing.

Deeming the record sufficiently intact to permit intelligent review, the BIA overruled the petitioner's objection and processed his appeal. In the end, it affirmed the IJ's ukase. This timely petition for judicial review followed.

## II. STANDARD OF REVIEW

Following the filing of a petition for judicial review of a final order of removal, this court typically reviews the decision of the BIA. But when, as now, the BIA adopts portions of the IJ's opinion, we review those portions of the IJ's opinion as well. Bebri v. Mukasey, 545 F.3d 47, 49-50(1st Cir. 2008); Romilus v. Ashcroft, 385 F.3d 1, 5 (1st Cir. 2004).

Findings of fact, including credibility determinations, are reviewed under the familiar substantial evidence rubric. Under this deferential formulation, contested findings will be upheld as long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Segran v. Mukasey, 511 F.3d 1, 5 (1st Cir. 2007) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). This means that the agency's determination must stand unless the facts, taken in the aggregate, "point[] unerringly in the opposite direction," Laurent v. Ashcroft, 359 F.3d 59, 64 (1st Cir. 2004), or "compel[] a contrary conclusion," Segran, 511 F.3d at 5. Given these precepts, a credibility determination will endure if and to the extent that the IJ has given reasoned consideration to the evidence and has provided a cogent explanation for his finding. Chhay v. Gonzales, 540 F.3d 1, 5 (1st Cir. 2008); Pan v. Gonzales, 489 F.3d 80, 87 (1st Cir. 2007).

We review most legal questions, including the due process challenges launched here, de novo. See Aguilar-Solis v. INS, 168 F.3d 565, 568 (1st Cir. 1999). We accord deference, however, to the agency's reasonable interpretations of statutes and regulations that it administers. See Segran, 511 F.3d at 5; see also Chevron U.S.A., Inc., v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-44 (1984).

**III.  ANALYSIS**

The petitioner's brief is not a model of clarity.  As best we can tell, he appears to be making three basic claims of error.  We address these claims sequentially.

## A.  Competency.

The petitioner's most loudly bruited claim is that his mental impairment was so obvious throughout the course of the proceedings that the IJ, acting sua sponte, should have initiated a competency evaluation.  In the petitioner's view, this failure transgressed the Due Process Clause.  We do not agree.

As a matter of background, it is important to recognize that not every trial error sinks to the level of a due process violation.  This principle has special relevance in asylum proceedings, in which the relief sought comprises a discretionary grant by the Attorney General.  See Laurent, 359 F.3d at 61-62; see also 8 U.S.C. § 1158(b)(1)(A).  Aliens seeking asylum are entitled to basic procedural protections and to a fair hearing — but not to a letter-perfect one.  See Puliser v. Mukasey, 524 F.3d 302, 311 (1st Cir. 2008); Brue v. Gonzales, 464 F.3d 1227, 1233 (10th Cir. 2006).

In this context, fundamental fairness means in general terms that the alien must have a meaningful opportunity to present evidence and be heard by an impartial judge.  See, e.g., Sok v. Mukasey, 541 F.3d 43, 47-48 (1st Cir. 2008); Aquilar-Solis, 168

-7-

F.3d at 568-69.  In managing an asylum hearing, however, an IJ may work within "wide margins" without "offend[ing] the principle of fundamental fairness."  Laurent, 359 F.3d at 62.

An incompetent alien is entitled to additional procedural safeguards to help ensure the realization of his due process right to a fundamentally fair hearing.  As authorized by statute, 8 U.S.C. § 1229a(b)(3), the Attorney General has promulgated regulations that spell out the additional rights of aliens who are handicapped by mental incompetency.  See 8 C.F.R. §§ 1240.4, 1240.10(c).  As we shall explain, this case does not require us to probe those regulations.[2]

Whether an alien is competent is a different question. The petitioner here was represented by counsel — and in the first instance, it is the advocate's role, not the IJ's, to broach the issue of mental competence.  See Brue, 464 F.3d at 1233; see also Sok, 541 F.3d at 47-48.  In this instance, the petitioner's counsel failed to raise the issue of competency in the immigration court, nor did he request that an evaluation of the petitioner's competency be undertaken.  The failure to raise a competency issue in a timely manner renders an ensuing claim of error particularly weak.  See Sok, 541 F.3d at 47-48.  Put another way, where as here

---

[2] The petitioner hints that the statute and regulations are inadequate on their face.  This argument is undeveloped and, hence, waived.  See Nikijuluw v. Gonzales, 427 F.3d 115, 20 n.3 (1st Cir. 2005).

a petitioner fails to bring the possibility of incompetence to the attention of the immigration court, an IJ is not normally expected to initiate evaluative proceedings sua sponte. See id.

Of course, exceptional circumstances may require extraordinary measures. Here, however, the circumstances are not exceptional. The record contains no significantly probative evidence of any lack of competency on the petitioner's part. Certainly, the petitioner submitted none. His plea for relief is further undercut because he did not ask the BIA to allow him to reopen to present new evidence of incompetency, nor did he make a proffer of what the new evidence might have shown. Finally, he continues to refrain from offering any such enlightenment in this venue.

When all is said and done, the petitioner's claim seems to rest entirely on the premise that his incompetence is evident from the record of the hearing. We have scoured the record and find that it belies the petitioner's premise. Reading the hearing transcript, the most that we could expect the IJ to have seen is that, on a few isolated occasions, the petitioner stumbled over his answers and that his statements, overall, were inconsistent with those given during prior interviews. In our view, these glitches

are more consistent with a prevaricating petitioner than with a mentally incompetent one.[3]

This leaves the bare assertions of the petitioner's counsel. Those assertions simply cannot carry the weight of a due process claim. An attorney's conclusory statements regarding his client's mental incompetence, proffered for the first time in an appellate brief, are not a substitute for proof.[4]

If more were needed — and we doubt that it is — succeeding on a due process claim would require a showing of prejudice; that is, a showing that the faulty practice prejudiced the conduct of the hearing in some material way, such that it affected the outcome. See Puliser, 524 F.3d at 311. A petitioner

_____

[3] To be sure, the petitioner claimed to have been shot in 2001, and his counsel alleges for the first time in his brief in this court that the shooting resulted in a head wound. Even if this is so — the hearing transcript itself is unclear on this point — that wound occurred years before and the record contains no link between the purported head wound and a subsequent mental impairment. Furthermore, the petitioner testified that he suffered no lasting medical aftereffects from the shooting other than a slight hearing loss and occasional headaches. This symptomology alone is much too slender a reed on which to rest a claim of mental incompetence. Cf. Nelson v. INS, 232 F.3d 258, 262 (1st Cir. 2000) (noting that complaints of pain and poor memory do not rise to the level of mental incompetence in an immigration case).

[4] The petitioner's attorney claims to have been aware of his client's incompetence but to have stood mute because the client would have denied any impairment. We refer counsel to the Massachusetts Rules of Professional Conduct, R. 1.14: if an attorney who believes that his client's mental capacity is diminished such that he is exposed to harm, cannot act in his own interest, or cannot make an adequately considered decision regarding issues in his representation, his attorney should take "reasonably necessary protective action."

can carry his burden only by a specific showing that the challenged practice likely affected the result of the hearing. See id.; see also Teng v. Mukasey, 516 F.3d 12, 17-18 (1st Cir. 2008).

In this case, it is unclear how the lack of a competency evaluation could have prejudiced the petitioner's substantial rights. For one thing, there is nothing to indicate that the petitioner either is or would have been found to be incompetent. For another thing, incompetency is not a basis for a grant of asylum,[5] see Nee Hao Wong v. INS, 550 F.2d 521, 523 (9th Cir. 1977), and there has been no showing that a guardian would have been able to offer proof that would have established the petitioner's case.

That ends this aspect of the matter. For aught that appears, the petitioner had the hearing that due process required. He was represented by counsel, presented testimony and evidence, plainly understood the questions posed to him, and seems to have appreciated the consequences attendant to the hearing. As a matter of procedural due process, no more was exigible. See id.; Aguilar-Solis, 168 F.3d at 568-69.

---

[5] Indeed, incompetence may in certain circumstances constitute a ground for either exclusion or removal of an alien. See 8 U.S.C. § 1182(a)(1) (2008); see also Nelson v. INS, 232 F.3d 258, 262 (1st Cir. 2000).

-11-

## B.  **Credibility**.

An applicant for asylum has the burden of proving that he is a refugee because of either past persecution or a well-founded fear of future persecution on account of a statutorily protected ground such as race, religion, nationality, membership in a particular social group, or political opinion.  See 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 208.16(b)(2).  Although an applicant's credible testimony may be sufficient to carry his burden of proof, an IJ is entitled to evaluate the asylum-seeker's credibility and to require corroboration of self-serving testimony when such corroboration appears to be readily obtainable.  See Chhay, 540 F.3d at 6.  Material inconsistencies between an early immigration interview and later testimony may form the basis for an adverse credibility determination.  See, e.g., Bebri, 545 F.3d at 48; Pan, 489 F.3d at 86.

To a large extent, determining credibility is a matter of sound judgment and common sense.  Thus, when an alien's earlier statements omit any mention of a particularly significant event or datum, an IJ is justified — at least in the absence of a compelling explanation — in doubting the petitioner's veracity.  See, e.g., Segran, 511 F.3d at 7.  After all, an alien's testimony "need not be taken at face value."  Bebri, 545 F.3d at 49 n.2.

We add, moreover, that an IJ is entitled to consider the context and the totality of the circumstances in evaluating

-12-

credibility.  See id.  So too the IJ is warranted in weighing in the balance the existence and availability of corroborating evidence, and the effect of its non-production.  See Chhay, 540 F.3d at 6; Kho v. Keisler, 505 F.3d 50, 57 (1st Cir. 2007).  Finally, a credibility determination is not necessarily an all-or-nothing proposition; an IJ may choose to believe one part of an alien's testimony, disbelieve other parts, and accord different weight to different pieces of testimony.  See Chhay, 540 F.3d at 8.

Here, the petitioner tries to cloak this claim of error in the raiment of due process.  This masquerade does not alter the standard of review.  Although the petitioner uses the vocabulary of due process, his attack, stripped to its bare essence, is on the IJ's factfinding.  As such, the substantial evidence standard governs.  See Pan, 489 F.3d at 84.

So viewed, the petitioner's claim fails. Merely weighing the evidence in a way that is unfavorable to the petitioner's interests is neither a violation of due process nor a badge of error.  Chhay, 540 F.3d at 8.  Simply put, this is a case in which the petitioner has told different tales at different times.  In that circumstance, a judge is entitled to "sharply discount" the testimony.  Pan, 489 F.3d at 86; see Nikijuluw v. Gonzales, 427 F.3d 115, 121 (1st Cir. 2005).  And the utter lack of

corroboration, easily obtainable were the petitioner's tale true,[6] supports the adverse credibility determination.

To cinch matters, the IJ explained his reasoning persuasively and in great detail. That explanation focused on the petitioner's failure to mention any of his supposedly "extensive" political activities in either of his original immigration interviews. The IJ noted as well that the petitioner did not see fit to refer to the two murders of family members until the hearing. The IJ was understandably skeptical that the petitioner's failure to report these important events earlier indicated recent fabrication. See Segran, 511 F.3d at 7. Finally, the IJ pointed to the petitioner's prior statement that he came to the United States seeking work. That was flatly inconsistent with his later claim that he was fleeing persecution.

In sum, we find no reason to disturb the IJ's adverse credibility determination.[7] The record, fairly read, does not compel a finding that the petitioner testified truthfully. It

---

[6] For example, the petitioner could have produced the letters allegedly received by his family, the records of medical treatment incident to the supposed 2001 shooting, his party membership card, or the like. He offered none of these documents. His failure either to do so or to explain their absence speaks volumes about the truthfulness of his testimony.

[7] The petitioner's reliance on the country reports to support reversal is misplaced. The inquiry here is not about the IJ's appreciation of the ELN's role generally but, rather, about whether the petitioner himself was persecuted on the basis of his political opinion. In the particular circumstances of this case, the country reports do not shed any light on that question.

follows inexorably that the adverse credibility determination is bulwarked by substantial evidence. See Aguilar-Solis, 168 F.3d at 571.

### C. **The Missing Transcript**.

The petitioner's last claim of error relates to the missing transcript of the master calendar conference. This claim is jejune.

To comply with the demands of due process, hearing transcripts need only be reasonably complete and accurate. See Kheireddine v. Gonzales, 427 F.3d 80, 84-85 (1st Cir. 2005). To make out a due process violation based on gaps in the record, then, a petitioner must show at a bare minimum that the gaps relate to matters material to his case and that the absence of missing transcripts is prejudicial. See id. Simply showing an imperfection in the record is not enough; the complaining party must show specific prejudice materially affecting his ability to obtain meaningful review. Teng, 516 F.3d at 17.

Here, the record of the immigration proceeding is substantially complete. Indeed, the record of the hearing itself is complete in every particular. The petitioner's remonstrance relates only to the missing transcript of a brief calendar conference, at which no evidence was taken.

The petitioner has provided a barebones outline of this objection: his counsel makes a conclusory statement that the

-15-

emergency room notes would have had a bearing on the issue of competence.  But he fails plausibly to explain how or why that is so.

In any event, the law is pellucid that if a missing transcript reasonably could be recreated by the complaining party, its absence is not prejudicial.  See Kheireddine, 427 F.3d at 86. This is such a case.  The original emergency room record presumably still exists, yet the petitioner made no effort before the BIA (or before us, for that matter) either to produce that record or to explain why it is not available.  Because it would have been child's play simply to resubmit these notes, this claim of error founders.

## IV.  CONCLUSION

We need go no further.  For the reasons elucidated above, we uphold the BIA's decision.

**The petition for review is denied**.