# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 09-1346

———————

Judith Azie,                                  *
                                              *
              Petitioner,                     *
                                              *    Petition for Review of a Final
       v.                                     *    Decision of the Board of
                                              *    Immigration Appeals.
Eric H. Holder, Jr., Attorney General         *
of the United States,[1]                      *
                                              *
              Respondent.                     *

———————

Submitted: November 17, 2009
Filed: April 21, 2010

———————

Before MURPHY, SMITH, and BENTON, Circuit Judges.

———————

SMITH, Circuit Judge.

The Department of Homeland Security issued Judith Azie a notice to appear charging her with being subject to removal pursuant to § 237(a)(1)(B) of the Immigration and Nationality Act (INA); 8 U.S.C. § 1227(a)(1)(B) (remaining without authorization). Azie admitted the allegations and charges in the notice to appear. Subsequently, Azie applied for asylum, withholding of removal, and Convention

---

[1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric H. Holder, Jr., is automatically substituted for Michael B. Mukasey as Respondent.

Against Torture (CAT) protection. The Immigration Judge (IJ) issued a decision finding Azie removable as charged and denying her requests for relief. The Board of Immigration Appeals (BIA) affirmed the IJ's judgment and Azie now petitions this court for review. We deny the petition.

## I. *Background*

Azie arrived in the United States on or about November 17, 2003, as a non-immigrant visitor, with authorization to remain until May 17, 2004. On February 1, 2005, the Department of Homeland Security issued Azie a notice to appear charging her with being subject to removal pursuant to § 237(a)(1)(B) of the INA. At a hearing before the IJ on April 1, 2005, Azie admitted the allegations and charges in the notice to appear, conceding that she is removable. Azie also applied for asylum, withholding of removal, and CAT protection at the hearing.

In support of her applications, Azie testified that she suffered physical abuse in Cameroon because of her political affiliations. She claimed that she was detained and beaten in October 1992 and October 2001 by Cameroonian officials because of her support of the Social Democratic Front and the South Cameroon National Congress (SCNC). As a result of these beatings, Azie testified that she suffers from headaches, anxiety, depression, has trouble concentrating, processes information slowly, and has a poor memory. Azie also bears a noticeable scar that she claims resulted from the 2001 beating.

Azie further testified that she became involved with the SCNC after her release in 1992. Azie offered her SCNC membership card as proof of SCNC involvement. Azie asserted that she received the SCNC membership card in February 2001, but that she lacked a photograph or money to have a photograph taken at the time, so she did not affix a photograph to the card. In 2003, Azie obtained a visa to come to the United States. She claimed she affixed one of the photographs that she obtained for her visa to her 2001 SCNC card. She maintains that this explains why the scar she received

from the October 2001 beating appears on her February 2001 SCNC card rather than one made contemporaneous with the issuance of the membership card.

Azie also presented medical records in support of her claims at the hearing. These records state that Azie's brain trauma occurred in 2002, which contradicted her testimony that she was injured in 2001. During the hearing, Azie attempted to explain the discrepancy. She testified that she informed medical staff that she began having problems from, and taking medications for, the injury in 2002. She claims that the staff must have confused the time of injury with when she began receiving treatment for it. The error, Azie surmises, was probably copied by subsequent caregivers. Alternatively, Azie asserts that any misstatement she made about the date that her injuries occurred can be attributed to the brain trauma that continues to plague her.

The IJ found Azie removable as charged. Azie appealed to the BIA. The BIA affirmed the IJ's ruling, and Azie now appeals the ruling of the BIA. On appeal, we address two issues: (1) whether the BIA and IJ erred by failing to give proper weight to Azie's brain injuries and (2) whether the BIA and IJ erred in concluding that Azie's testimony was not credible based on the photograph affixed to her SCNC membership card and dates contained in her medical record. We answer both questions in the negative and affirm the BIA's ruling.

II. *Discussion*
A. *Weight Given to Azie's Brain Injuries*

On appeal, Azie maintains that she was unable to properly respond to questions during her hearing because of her mental impairments. First, Azie asserts that in making her adverse credibility determination, the IJ made no reference to Azie's impairments. Although she is not raising a translation-based due process claim, Azie contends that the rule in translation cases is pertinent here: "[T]he alien must be able to understand the questions posed to him and to communicate his answers to the IJ." *Perez-Lastor v. INS*, 208 F.3d 773, 778 (9th Cir. 2000). Thus, Azie concludes that it

is improper for an asylum application to be denied when the IJ cannot—be it the result of poor translation or, in this case, impaired communication skills—understand the petitioner, whether that misunderstanding causes a due process violation, or whether it results in an adverse credibility finding.

Next, Azie urges that since her credibility was at issue, the IJ should have suspended the hearing to permit her and her attorney to review the testimony to determine what questions were misunderstood and to provide an opportunity to cure any defects or misunderstandings in her prior testimony.

"We review the [BIA]'s conclusions of law de novo, with substantial deference to its interpretations of statutes and regulations administered by the agency." *Ateka v. Ashcroft*, 384 F.3d 954, 957 (8th Cir. 2004). "The [BIA]'s findings of fact will be disturbed only if unsupported by substantial evidence." *Id.*

> We review the agency determination that an alien is not eligible for asylum, withholding of removal, or relief under the Convention Against Torture using the deferential substantial evidence standard. Under this deferential standard of review, we are not at liberty to reweigh the evidence, and we will uphold the denial of relief unless the alien demonstrates that the evidence was so compelling that no reasonable fact finder could fail to find the requisite fear of persecution.

*Osonowo v. Mukasey*, 521 F.3d 922, 926–27 (8th Cir. 2008) (internal quotations and citations omitted). "When the BIA adopts and affirms the IJ's decision, but also adds reasoning of its own, we will review both decisions together." *Chen v. Mukasey*, 510 F.3d 797, 800 (8th Cir. 2007).

Azie's arguments fail. Azie, through counsel, had ample opportunity at her hearing to raise lack of comprehension or inability to coherently respond. Azie did not. Moreover, as the BIA noted, the record reflects that the IJ continued the hearing

for approximately six months. During this time, Azie's counsel still did not raise these concerns. Azie bore the burden to state if and when she did not understand a question and to provide credible testimony in response. *Feleke v. INS*, 118 F.3d 594, 598 (8th Cir. 1997); 8 C.F.R. § 208.13(a) (The burden of proof is on the alien to establish eligibility for asylum). We acknowledge that at least one sister circuit has indicated that in "exceptional circumstances" the IJ may *sua sponte* initiate evaluative proceedings into a petitioner's ability to testify. *MuGoz-Monsalve v. Mukasey*, 551 F.3d 1, 6 (1st Cir. 2008). However, even if we chose to find *MuGoz-Monsalve* persuasive, the decision to initiate such proceedings would lie within the substantial discretion of the IJ. In this case, on the record before us, we conclude that it was not reversible error to fail to order such proceedings.

### B. *The Credibility of Azie's Testimony*

Azie next argues that the BIA erred in concluding that her testimony was not credible based on the photograph affixed to her SCNC membership card. Azie maintains that the IJ's conclusion that she either lied or submitted a false document ignores her explanation. Azie submits that the IJ's hypothesis that her SCNC card amounted to a false document because she affixed a picture to the card after she received it was based on nothing more than the IJ's own uninformed hypothesis that SCNC cards must have photographs affixed at the moment of receipt. Azie insists that the type of picture normally affixed, and when it can be affixed, to an SCNC card are details upon which only an expert on Cameroonian documents could opine. Without that expertise, she maintains, one cannot conclude that her SCNC card bore readily identifiable indications of fraud. Thus, Azie concludes that the IJ had a duty—even without being requested—to substantiate her opinion regarding the legitimacy of the SCNC card by submitting it to a forensic laboratory for review.

Finally, Azie argues that the BIA erred in concluding that her testimony was not credible based on dates contained in her record. Azie maintains that she adequately

explained these minor inconsistencies and that they in no way contradict the volume of facts supporting her past persecution and well-founded fear of future persecution.

"[W]e defer to the IJ's credibility finding when it is supported by specific, cogent reasons for disbelief." *Onsongo v. Gonzales*, 457 F.3d 849, 852 (8th Cir. 2006).

In this case, the record reflects that the IJ's credibility finding is supported by specific, cogent reasons. The IJ stated:

> If the Court were to look at it that Ms. Azie already had the scar on her jaw at the time that the photo was placed on the card in February of 2001, then Ms. Azie is lying about getting the scar in an incident in October 2001. If the Court were to believe Ms. Azie that she later placed the photo on the card at a later time after she had the scar and altered the card herself, Ms. Azie would have also had to place on the card the stamp which appears over the photograph and over part of the card that is surrounding the photograph area. Accordingly, either way the Court looks at Ms. Azie's testimony or explanation about how she had the scar in that photo and how that photo was on the card, Ms. Azie has either presented false testimony or has presented an altered fraudulent card.

Accordingly, we conclude that the BIA did not clearly err in concluding that Azie's testimony regarding her SCNC card was not credible.

Azie's contention that her card should have been submitted to a forensics lab for review was not raised below and accordingly is waived. As a precondition to judicial review, the petitioner is to have "exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1); *Frango v. Gonzales*, 437 F.3d 726, 728 (8th Cir. 2006); *Etchu-Njang v. Gonzales*, 403 F.3d 577, 581–83 (8th Cir. 2005) (concluding that in enacting § 1252(d)(1) Congress likely intended to continue to

require that an alien not only pursue all stages of administrative review, but also raise all issues before the agency).

We also disagree with Azie's contention that the BIA erred in concluding that her testimony was not credible based on inconsistent dates contained in her medical record. Date of injury inconsistencies might be insufficient as a sole basis to support an adverse credibility finding; however, here, it was simply one of several factors the agency cited in its overall determination. Again, we conclude that the IJ's credibility finding is supported by specific, cogent reasons and decline Azie's invitation to reweigh the evidence in her favor.

### III. *Conclusion*

Azie's petition for review is denied.

_____