**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 09-1931

MARIE RITZA BALAN,

Petitioner,

v.

ERIC H. HOLDER, JR.,
UNITED STATES ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW FROM
THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Boudin and Lipez, Circuit Judges.

Harvey J. Bazile and Bazile & Associates for the petitioner.
Micheline Hershey, Attorney, Office of Immigration Litigation,
Tony West, Assistant Attorney General, Civil Division, and Greg D.
Mack, Senior Litigation Council, Office of Immigration Litigation,
for the respondent.

July 15, 2010

**LYNCH**, <u>**Chief Judge**</u>.   Marie Ritza Balan, a native and citizen of Haiti, petitions for review of an order by the Board of Immigration Appeals ("BIA") affirming the ruling of an immigration judge ("IJ") denying Balan's application for asylum, withholding of removal ("WOR"), and relief under the Convention Against Torture ("CAT").   For very good reason, the IJ found that Balan's claims of persecution were not credible and that Balan had failed to show either past persecution or a reasonable fear of future persecution. Balan may apply if she is eligible for temporary protected status under a moratorium declared after the recent disasters in Haiti. Designation of Haiti for Temporary Protected Status, 75 Fed. Reg. 3476-02, 3477-78 (Jan. 21, 2010).   That may affect whether the Department of Homeland Security executes an order of removal, but it does not affect adjudication of her petition.

I.

Balan arrived in the United States without inspection at St. Thomas, in the Virgin Islands, on May 13, 2004.   On June 23, 2004, she filed an affirmative application for asylum, WOR, and CAT relief, asserting that she feared returning to Haiti because she would be subject to persecution on account of her husband's involvement in politics.

We describe Balan's application, which differed from her testimony.   Balan stated that her husband was the driver for a Haitian political leader, Evans Paul.   Evans Paul was the former

-2-

mayor of Port-Au-Prince and a founder of the Democratic Unity Federation (known in Haiti as KID), a political party opposed to former Haitian president, Jean-Bertrand Aristide, and Aristide's political party, the Lavalas Party. On February 29, 2004, Aristide resigned from the presidency.

Balan alleged that following Aristide's resignation, her husband was shot and she was kidnapped and threatened. Specifically, Balan stated that on March 4, 2004, after her husband dropped off Paul at his home, Balan's husband's car was surrounded by a group of Lavalas party supporters. When Balan's husband refused to get out of the car and instead drove away, he was shot but not killed.

Then, on April 17, 2004, a group of people broke into Balan's house while her husband was away and asked where her husband was. The people then beat her, kidnapped her, and told Balan they were going to kill her. When they arrived at a bushy area outside of town, the group let her go, purportedly because she was a woman. They told Balan that if she did not leave her husband, they would kill Balan and her husband. Balan left Haiti and made her way to the United States.

After an interview with an asylum officer, Balan was denied relief and referred for a hearing before an IJ. The asylum officer found that Balan's testimony lacked credibility because she "was unable to provide sufficient detail to establish her claim."

Balan could not name the day on which her husband was shot or the political party to which he belonged. Further, after asserting that she was aware of the contents of her asylum application, during the interview, Balan gave the officer a materially differing account of the April 17 kidnapping, saying that the persons who abducted her were police officers and that they raped her before she was released.

In March 2006 the Department of Homeland Security served Balan with a Notice to Appear, charging her with removability. Balan apparently conceded removability.

A month before her hearing before the IJ, Balan submitted an affidavit that repeated the shooting and kidnapping incidents she alleged in her asylum application. But she did not allege that she had been sexually assaulted during the April 17 abduction or that the people who abducted her were police officers.

An IJ heard Balan's claims on November 28, 2007. Balan was the only witness to testify. She recounted the incident in which her husband was shot, saying it occurred on the same date she had listed in her asylum application, March 4, 2004. She also described a kidnapping incident similar in some ways to the one alleged in her asylum application, in which five men searching for her husband abducted and beat her and then left her outside of town, with a warning that she would be killed if she stayed with her husband. Significantly, though, Balan testified that this

incident occurred on February 14, 2004. That date placed the incident before rather than after the shooting, as Balan had stated in her earlier application. Balan also made no mention of the sexual assault she had alleged during her asylum interview but did not mention in her application.

Balan testified that she had not had any other problems in Haiti. However, when asked specifically about the April 17, 2004, incident described in her asylum application, Balan testified that she had also been abducted that day and that it was a separate incident from the one she described as having occurred on February 14.

When cross-examined about these inconsistencies, Balan said that she did not understand the questions. She also acknowledged that she told the asylum officer that she had been sexually assaulted during the April 17, 2004, incident but made no such claim in her asylum application or in her hearing testimony. She did not explain any of these discrepancies.

Citing these inconsistencies,[1] Balan's failure to explain them, and Balan's "feigned lack of understanding" during the hearing of questions meant to address the inconsistencies, the IJ,

---

[1]    The IJ also noted that Balan gave inconsistent accounts regarding her husband's whereabouts. She told the asylum officer that her husband had been turned back to Haiti after he had tried to escape to the United States by boat. At the hearing, Balan said that he escaped to Guadeloupe and was ultimately arrested in Saint Martin and sent back to Haiti.

in an oral opinion, found Balan's testimony "non-credible and unreliable." The IJ also found that, even assuming her testimony was credible, Balan could not establish a well-founded fear of persecution because the groups she claimed to be threatening her, supporters of former Haitian President Jean-Bertrand Aristide, were no longer in power. Because Balan could not meet the burden for asylum, the IJ also concluded that Balan could not meet the heavier burden to show entitlement to WOR. Finally, the IJ found Balan not entitled to CAT relief because the group she feared was not a part of the government.

Balan appealed to the BIA, although she did not object to the IJ's credibility findings. In its written opinion, the BIA affirmed the IJ's decision, concluding that the adverse credibility finding made it impossible for Balan to show past persecution, that Balan could not show future persecution, and that she was not entitled to WOR or CAT relief.

## II.

"When 'the BIA adopted and affirmed the IJ's ruling' but also 'discussed some of the bases for the IJ's opinion, we review both the IJ's and BIA's opinions.' We also review the IJ's credibility determination when the BIA adopted it." Weng v. Holder, 593 F.3d 66, 71 (1st Cir. 2010) (quoting Cuko v. Mukasey, 522 F.3d 32, 37 (1st Cir. 2008)) (internal citation omitted).

-6-

We review findings of fact for substantial evidence and are required "to uphold the agency's findings so long as the record does not 'compel a reasonable factfinder to reach a contrary determination.'" Rivas-Mira v. Holder, 556 F.3d 1, 4 (1st Cir. 2009) (quoting Chhay v. Mukasey, 540 F.3d 1, 5 (1st Cir. 2008)). We uphold credibility findings if "the IJ has given reasoned consideration to the evidence and has provided a cogent explanation for his finding." Muñoz-Monsalve v. Mukasey, 551 F.3d 1, 5 (1st Cir. 2008). Legal conclusions are generally reviewed de novo. Id.

To receive asylum, an applicant must show that she is a "refugee," 8 U.S.C. § 1158(b), meaning that she is unwilling to return to her home country "because of persecution or a well founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion," id. § 1101(a)(42)(A); see also Anacassus v. Holder, 602 F.3d 14, 19 (1st Cir. 2010). An applicant that shows past persecution is "presumed to have a well-founded fear" of future persecution. 8 C.F.R. § 1208.13(b)(1).

An applicant may meet her burden to show past or future persecution on the basis of her own testimony alone. See Settenda v. Ashcroft, 377 F.3d 89, 93 (1st Cir. 2004). But incredible testimony can be "disregarded or sharply discounted," Nikijuluw v. Gonzales, 427 F.3d 115, 121 (1st Cir. 2005), and for that reason

-7-

"an adverse credibility finding can prove fatal" to a claim, <u>Pan</u> v. <u>Gonzales</u>, 489 F.3d 80, 86 (1st Cir. 2007).

Although Balan argues to us that she was a victim of past persecution, she does not challenge the BIA's and IJ's credibility findings, which means that any challenge to the credibility finding is waived. <u>See</u> <u>Pangemanan</u> v. <u>Holder</u>, 569 F.3d 1, 3 n.2 (1st Cir. 2009). In any event, we would affirm the BIA's and IJ's credibility determinations because they clearly gave Balan's evidence "reasoned consideration" and provided "cogent explanation[s]" for their conclusions. <u>Muñoz-Monsalve</u>, 511 F.3d at 5. Both cited to specific inconsistencies in her testimony and explained why they undermined the credibility of her account.

Since Balan was the only person to testify to her past persecution, she has provided no credible evidence to support a finding of past persecution, and we are not compelled to find contrary to the BIA's conclusion that Balan has failed to meet her burden.

In any event, substantial evidence supports the BIA's and IJ's findings that Balan cannot show likelihood of future persecution because of changed circumstances in Haiti. Balan asserts on appeal that Haiti remains a dangerous place for her as a general matter, but she cites to no evidence in the record that supports her position. Balan's testimony and the country reports she submitted do not compel a contrary finding. At most they show

that Balan was afraid of the Lavalas party, which, as the IJ and BIA noted, is no longer in power in Haiti.

Because we are affirming the BIA's and IJ's findings on the asylum claim, we also affirm denial of Balan's claim for WOR. See Pan, 489 F.3d at 86; Settenda, 377 F.3d at 93.

Balan also failed to raise a challenge to the BIA's and IJ's findings on her CAT claim, which is therefore waived. In any event, substantial evidence supported the conclusion that Balan would not be subjected to torture by or with the acquiescence of the Haitian government if she were removed to Haiti. See 8 C.F.R. § 1208.16(c).

The petition for review is denied.