Not For Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 07-1076

ILIR HOXHA,

Petitioner,

v.

MICHAEL B. MUKASEY,[*]
ATTORNEY GENERAL OF THE UNITED STATES

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Circuit Judge,
Campbell, Senior Circuit Judge,
and Lynch, Circuit Judge.

Jeanette Kain, Harvey Kaplan, and Kaplan, O'Sullivan & Friedman, on brief for petitioner.
Lauren E. Fascett, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Peter D. Keisler, Assistant Attorney General, Civil Division, and David V. Bernal, Assistant Director, Office of Immigration Litigation, on brief for respondent.

December 7, 2007

---

[*]   Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Michael B. Mukasey is substituted for former Attorney General Alberto R. Gonzáles as respondent.

**TORRUELLA**, <u>Circuit Judge</u>.  Ilir Hoxha applied for asylum, withholding of removal, and relief under the federal regulations implementing the Convention Against Torture ("CAT").  An immigration judge ("IJ") found him not credible, denied all of his claims, and ordered him removed.  He appealed to the Board of Immigration Appeals ("BIA"), which affirmed the IJ's opinion.  Hohxa now petitions for review of the BIA's denial of his appeal, claiming the BIA erred in finding him not credible.  He also raises a new claim that his due process rights were violated in an early series of immigration hearings.  After careful consideration, we deny the petition.

## I.  Background

Hoxha is an Albanian national who entered the United States in December 1999 on a false passport.  He did not speak English, and enlisted the help of another Albanian -- Hamdi Dega -- in preparing and filing his asylum application on September 6, 2000.  Dega's brother, Agim Dega, served as Hoxha's translator during the initial interview with an asylum officer, who then prepared and filed an assessment memo on October 17, 2000.  A series of hearings was held before an IJ in New York.  Upon discovering that the application had been prepared by Hamdi Dega, who is not authorized to practice law and is notorious for inventing stories in Albanians' asylum applications, the IJ declared that he would not consider the asylum application.  Hoxha subsequently submitted a statement, dated April 17, 2001, in which he purported to correct the inaccuracies in the application.  The

-2-

IJ found this statement insufficient and ordered that an entirely new application be prepared. Hoxha then prepared a second application with the assistance of a lawyer, and submitted it on July 25, 2001. At a subsequent hearing, the IJ berated Hoxha at length for being so foolish as to choose Dega to assist him. No testimony was taken at any of these New York hearings.

Hoxha requested and was granted a change of venue to Boston. The new IJ re-marked all of the documentary evidence, and Hoxha testified in support of his application. Hoxha stated that he became actively involved in the Albanian Democratic Party following the restoration of democracy in 1990. In a 1992 protest, Hoxha and his father were arrested and held in detention for two days; they were warned to cease their involvement in Democratic Party activities. Despite this warning, Hoxha continued to be active. He served as an election observer on behalf of the Democratic Party in June 1997, and refused to certify the election because of what he claimed was Socialist Party manipulation of the votes. According to Hoxha, Socialist Party members threatened him and dynamited a part of his house; he soon grew so afraid that he agreed to certify the vote. In August 1998, the secret service searched Hoxha's house; Hoxha was absent, but they beat his father, who died two days later. Hoxha testified that, in September 1998, he attended the funeral of an assassinated Democratic Party leader and was beaten by police with rubber sticks. A few days later he was arrested, questioned about Democratic Party activities, threatened, and beaten again. Hoxha was arrested and detained yet

-3-

again in October 1999, and was told he would be killed if he continued his Democratic Party activities. Shortly thereafter, Hoxha left for the United States.

On May 26, 2005, the IJ denied Hoxha's request for asylum, withholding of removal, and CAT relief because Hoxha had failed to provide credible testimony in support of his alleged fear of persecution in Albania.[1] The IJ pointed to a number of inconsistencies between Hoxha's testimony and other evidence in the record, including the following: (1) documents submitted by Hoxha, Hoxha's testimony, and a written statement by Hoxha's mother provided various different dates for when Hoxha became active in the Democratic Party; (2) Hoxha testified that he stopped giving money to the Party after he became unemployed in 1997, but in his July 2001 asylum application he stated that he was employed as a salesman from 1997 to 1999; (3) the personal statement accompanying Hoxha's July 2001 application asserts that he was hit with a rifle butt at the 1998 funeral; an April 2004 affidavit submitted by Hoxha asserts he was hit with a baton; Hoxha testified that he was hit with rubber sticks; and he makes no mention of this incident at all in the April 2001 statement; (4) Hoxha testified that he, his brother, and his mother were beaten when the police came to arrest him at his home in September 1998, but neither the April 2001 statement nor the April 2004 affidavit mention this beating, and

---

[1] At one of the several hearings in Boston, the IJ stated that he would give no weight to the application prepared with the help of Hamdi Dega.

-4-

his mother's statement also makes no mention of it; (5) the asylum officer's October 2000 assessment memo, prepared on the basis of Agim Dega's translation, stated that Hoxha's father was hit with the butt of a gun during the September 1998 incident, but also states that his father died in August 1998; (6) the October 2000 assessment memo also stated that, in October 1999, Hoxha was arrested and boiled eggs were placed under his armpits, but Hoxha testified that no boiled eggs were ever placed under his arms; (7) Hoxha testified at the hearing and asserted in the July 2001 statement that he was threatened by Socialists the night before the 1997 elections, but the April 2001 statement and the 2004 affidavit state that he was threatened on the evening of the elections; (8) Hoxha testified that an explosive device went off at his house in July 1997, but that no one was injured; the October 2000 assessment memo states that Hoxha and his father were injured in the explosion; and the April 2001 statement states that Hoxha and both his parents were injured; and (9) documents presented by Hoxha show that the Albanian police issued him a passport after he had left Albania, even though Hoxha claimed this same police force was seeking to kill him for his political involvement.

The BIA affirmed the IJ's determination. While it faulted the IJ for considering the October 2000 assessment memo, as it had been prepared based on a translation provided by Agim Dega, the BIA nonetheless concluded that the IJ's adverse credibility determination was not clearly erroneous. It briefly discussed three examples of the discrepancies in the evidence on record and

concluded that "[i]nasmuch as the respondent failed to provide a convincing explanation for these discrepancies -- other than to place blame on others, including the [Democratic Party of Albania] Secretary, his attorney's translators, and his mother's memory -- we find no clear error in the Immigration Judge's adverse credibility determination in this case . . . ."

Hoxha now petitions for review of the BIA's adverse credibility determination. He also raises a new claim, that the BIA erred in neglecting to consider due process violations that occurred at the hearings before the IJ in New York. Hoxha requests that we vacate the adverse credibility finding and remand for further proceedings to consider his substantive asylum, withholding, and CAT claims. After careful consideration, we affirm the decision of the BIA.

## II. Discussion

### A. Standard of Review and Applicable Law

Ordinarily, we review decisions of the BIA only; however, where the BIA has deferred to or adopted and affirmed findings of the IJ, we also review the adopted portion of the IJ's decision. Hernández-Barrera v. Ashcroft, 373 F.3d 9, 20 (1st Cir. 2004); see also Mewengkang v. Gonzáles, 486 F.3d 737, 739 (1st Cir. 2007) ("Where the BIA has adopted the IJ's credibility determination, . . . we review the determination of the IJ."). An applicant for asylum must prove he is a refugee within the meaning of the Immigration and Nationality Act, 8 U.S.C. § 1158(b)(1), which he may do by showing "past persecution or a well-founded fear of future persecution" based on political opinion. Ali v. Gonzáles, 401 F.3d 11, 15 (1st Cir. 2005). The evidence in support of this showing must be both "credible and specific." Bojorques-Villanueva v. INS, 194 F.3d 14, 16 (1st Cir. 1999).

An alien may be found incredible based on discrepancies in testimony where "(1) the discrepancies and omissions described by the [IJ or BIA] are actually present; (2) these discrepancies and omissions provide specific and cogent reasons to conclude that the respondent provided incredible testimony; and (3) the respondent has not provided a convincing explanation for the discrepancies and omissions." In re A-S-, 21 I. & N. Dec. 1106, 1109 (BIA 1998); see also Hoxha v. Gonzáles, 446 F.3d 210, 216-17 (1st Cir. 2006) (applying test from In re A-S-). Yet "an adverse credibility determination cannot rest on trivia but must be based

-7-

on discrepancies that involved the heart of the asylum claim." See Bojorques-Villanueva, 194 F.3d at 16 (citation and internal quotation marks omitted).

We accord "significant respect" to the adverse credibility determination of an IJ or the BIA, provided it is supported by specific findings in the record. Afful v. Ashcroft, 380 F.3d 1, 4 (1st Cir. 2004) (quoting Aguilar-Solís v. INS, 168 F.3d 565, 571 (1st Cir. 1999)). We review the reasons given for disbelieving an asylum applicant under the "substantial evidence" standard: the credibility determination "must be upheld if supported by reasonable, substantial and probative evidence on the record considered as a whole." Mendes v. INS, 197 F.3d 6, 13 (1st Cir. 1999) (quoting INS v. Elías-Zacarías, 502 U.S. 478, 481 (1992)) (internal quotation marks omitted). We will uphold an adverse credibility determination unless the record evidence would compel a reasonable factfinder to make a contrary determination. Stroni v. Gonzáles, 454 F.3d 82, 87 (1st Cir. 2006).

Aliens facing removal are entitled to due process under the Fifth Amendment. Ishak v. Gonzáles, 422 F.3d 22, 32 (1st Cir. 2005). We review due process claims asserted in immigration proceedings de novo. Zheng v. Gonzáles, 464 F.3d 60, 62 (1st Cir. 2006).

## B. <u>Credibility Determinations</u>

Hoxha argues that we should ignore the IJ's decision, and look only at the reasons given by the BIA, because the BIA did not adopt the IJ's reasoning; instead, it "rendered its own decision based on its own review of the record and some, but not all, of the [IJ]'s reasons." We disagree. As noted above, we read the IJ's findings as those of the BIA to the extent that the BIA has deferred to or adopted them. See <u>Hernández-Barrera</u>, 373 F.3d at 20. In this case, although the BIA did not expressly state that it adopted the IJ's findings concerning the discrepancies between Hoxha's testimony and other documents in the record, it clearly deferred to them, with one significant exception: the BIA determined that the IJ had erred in relying in part on the October 2000 assessment memo prepared on the basis of Agim Dega's translation. "Be that as it may," the BIA stated, "we note that the Immigration Judge identified a number of other inconsistencies and omissions . . . ." The BIA then proceeded to enumerate three examples of the many given by the IJ. The Board was not required to repeat and expressly endorse each of the IJ's reasons seriatim.

We thus turn to whether the IJ's credibility determination, as deferred to by the BIA, is supported by substantial evidence on the record considered as a whole. Some of the inconsistencies cited by the IJ are trivial and, standing alone, would probably not provide substantial evidence in support of an adverse credibility determination. The obvious example is the discrepancy concerning what type of weapon -- rifle butt,

baton, or rubber stick -- was used to beat Hoxha at the 1998 funeral. Nevertheless, even disregarding the IJ's findings that hinged upon an inconsistency between the October 2000 assessment memo and another document or Hoxha's testimony,[2] other inconsistencies strike closer to the heart of Hoxha's asylum claim, particularly those that have to do with whether Hoxha or his family were harassed or beaten, and the extent of such harassment or beatings. We discuss two examples. First, Hoxha testified that he and his mother were beaten when the police arrested him in September 1998; however, none of the documents in the record mention this beating including, most tellingly, Hoxha's mother's statement. Considering the trauma such an event would have caused, one would expect the mother to have remembered to mention it in her statement supporting her son's asylum application. Hoxha's explanation that she is simply forgetful is unconvincing. Second, Hoxha testified that no one was injured when an explosive device was detonated at his home in July 1997; this evidence contradicted his assertion in the April 2001 statement that he and his parents were injured. Even ignoring the October 2000 assessment memo's corroboration that Hoxha and his father were injured, the discrepancy between Hoxha's testimony and the April 2001 statement is clear and significant. When confronted with the discrepancy at one of the hearings, Hoxha attempted to explain that what he

---

[2]  We disregard the cited inconsistency as to whether Hoxha's father was still alive to have suffered a beating at the September 1998 funeral.  We also disregard the inconsistency over whether boiled eggs were placed under Hoxha's arms.

-10-

intended to say in the April 2001 statement was that he and his family suffered psychological, not physical, injury. The IJ obviously disbelieved this explanation or was otherwise unconvinced that it cured the discrepancy, and we see no reason to disturb this finding.

Considering the cumulative effect of the various cognizable discrepancies among the pieces of evidence in the record, we find that a reasonable trier of fact would not be compelled to reach a determination different from that of the IJ. As such, we conclude that the IJ did not err in concluding that Hoxha was not credible, and the BIA did not err in affirming and adopting the IJ's adverse credibility finding.

### C. Due Process Claim

Hoxha claims that he was denied due process in the New York hearings because the IJ "ranted and raved for hours about [his] choice of Hamdi Dega," "repeatedly implied that [he] should not be believed" because of "choices he made with his legal representation," and took judicial notice that Hamdi Dega had been a high-ranking Communist official in Albania. According to Hoxha, the notion that he would choose to associate with Hamdi Dega called into question his story that he had been persecuted by Albanian Socialist Party members, and this tainted his credibility in further proceedings.

This argument is unpersuasive. An applicant claiming a due process violation cannot prevail unless he shows that prejudice resulted. See, e.g., Kheireddine v. Gonzáles, 427 F.3d 80, 85 (1st

-11-

Cir. 2005). After transfer to Boston, the IJ deliberately re-marked all the documentary evidence and conducted a completely new hearing on the merits, thus providing Hoxha with a clean slate. There is no indication in the respective decisions of the BIA or the IJ, or anywhere else in the record, that either paid regard to the observations or opinions of the IJ in the New York proceedings. More fundamentally, Hoxha did not raise this specific claim before the BIA, and has thus failed to exhaust administrative remedies. See Mendes v. INS, 197 F.3d 6, 12 (1st Cir. 1999) (failure to sufficiently raise due process claim at deportation hearings or before BIA precludes judicial review).

### III.  Conclusion

The petition for review is **denied**.