# United States Court of Appeals
## For the First Circuit

No. 08-1899

SOKUN THY MAM; SOPHA HENG,

Petitioners,

v.

ERIC H. HOLDER, JR.,[*] ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Selya and Lipez, Circuit Judges.

Thomas Stylianos, Jr. on brief for petitioners.
Sunah Lee, Trial Attorney, Office of Immigration Litigation,
U.S. Department of Justice, Michael F. Hertz, Acting Assistant
Attorney General, Civil Division, and Michelle G. Latour, Assistant
Director, on brief for respondent.

May 22, 2009

---

[*]    Pursuant to Fed. R. App. P. 43(c)(2), Attorney General
Eric H. Holder, Jr. has been substituted for former Attorney
General Michael B. Mukasey as the respondent.

**LYNCH**, **Chief Judge**.  Sokun Thy Mam and his wife Sopha Heng, both natives and citizens of Cambodia, seek review of a final order of the Board of Immigration Appeals ("BIA") denying their application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  The BIA affirmed the decision of the Immigration Judge ("IJ"), who denied Mam and Heng's application on the basis of an adverse credibility finding.  We deny the petition.

I.

Mam and Heng entered the United States on August 20, 2001 and January 26, 2002, respectively.  Both overstayed, without authorization.  A year after his arrival, and on the same day his authorization expired, Mam filed an application for asylum, withholding of removal, and protection under the CAT.  The application was returned to Mam because it was prepared on an outdated form.  Mam hired an attorney, and on October 7, 2003, he filed a proper application, listing Heng as a beneficiary.

In an affidavit submitted with the application, Mam claimed he and his wife were persecuted by followers of Hun Sen, the head of the Cambodian government.  The claims in the affidavit are briefly summarized.  In 1993, Mam was threatened by police and forced to support the ruling party.  In 1997, soldiers stole two trucks and other materials from his home supply shop.  In 1998, he joined the opposition Sam Rainsy Party and received numerous death

-2-

threats as a result. That same year, he was beaten while leading a protest and was later arrested. In 2000, he was elected as a board member to a party electoral committee charged with helping to prepare for the 2002 election. Later that year, an unidentified car drove up to him as he was leaving the party office and pushed his motorcycle to the curb, causing Mam to break his right kneecap and injure his elbows. In November 2000, Mam fled to the countryside after learning that one of his friends had been arrested. While he was in hiding, police came repeatedly to his house to look for him. Not finding him, they threatened his wife. In February 2001, a police captain raped Heng. After this, she fled to the countryside to join Mam in hiding. Mam also claimed he had been blacklisted after the police accused him of being involved with the Cambodian Freedom Fighters, an anti-government group. His affidavit did not specify when this event occurred.

Mam and Heng both testified before the IJ on October 5, 2006. In an oral decision issued that day, the IJ denied Mam and Heng's application. The denial of asylum was based on an adverse credibility finding. The IJ cited a series of inconsistencies in the petitioners' testimony and affidavit. These included: (1) that Mam and Heng could not agree on a date when the alleged rape of Heng occurred; (2) that Mam and Heng gave different accounts of when the motorcycle accident occurred and the duration of Mam's hospitalization; (3) that Mam stated in his affidavit that the

accident resulted in a broken kneecap but in his testimony, Mam did not give the particular nature of his knee injury; (4) that Mam alleged in his affidavit that he was blacklisted but then failed to mention this on direct examination and had difficulty giving a date for when this occurred when asked on cross-examination; (5) that Mam failed to mention or describe in his testimony any of the death threats discussed in his affidavit; (6) that Mam testified he did not have any political problems before he joined the Sam Rainsy Party in 1998 but then discussed several incidents that occurred before this date; and (7) that Mam was unclear in his testimony as to whether he actually won the board position in 2000. The IJ also noted that Heng knew almost nothing about her husband's political activities. The IJ concluded that these omissions and discrepancies went to the heart of the petitioners' claim, under then-existing standards, and, in the aggregate, made it impossible for her to credit their testimony. The IJ also found that Mam and Heng failed to meet their burden for withholding of removal and that they presented no evidence to support a claim for protection under the CAT.

In an opinion issued July 15, 2008, the BIA affirmed on the basis of the reasons stated in the IJ's opinion. It pointed in particular to a handful of discrepancies that it found most strongly supported the IJ's determination that petitioners were not credible. These discrepancies were: (1) whether Mam had any

-4-

political problems before 1998; (2) whether Mam was in fact elected to a board member position in 2000; (3) the duration and date of Mam's hospitalization; and (4) the date of the alleged rape.[1]

Mam and Heng timely filed a petition for review, which challenges both the IJ's adverse credibility finding and the BIA's affirmance of that finding.

## II.

"Where, as here, 'the BIA adopted and affirmed the IJ's ruling, but also discussed some of the bases for the IJ's opinion, we review both the IJ's and the BIA's opinion.'" Cuko v. Mukasey, 522 F.3d 32, 37 (1st Cir. 2008) (quoting Lin v. Gonzales, 503 F.3d 4, 6-7 (1st Cir. 2007)) (internal quotation marks omitted). We review the IJ's credibility determination under the deferential substantial evidence standard. E.g., id.; Hoxha v. Gonzales, 446 F.3d 210, 216 (1st Cir. 2006). "Since the IJ has the best vantage point from which to assess the witnesses' testimonies and demeanors, we accord significant respect to these witness credibility determinations." Cuko, 522 F.3d at 37. Accordingly, we will not upset the agency's credibility determination unless petitioners can show the record evidence, considered as a whole, "would compel a reasonable factfinder to make a contrary determination." Id. (emphasis in original) (quoting Stroni v.

---

[1] The BIA also rejected as meritless a challenge to the IJ's decision based on due process grounds. Petitioners have not challenged this ruling in their petition for review.

-5-

Gonzales, 454 F.3d 82, 87 (1st Cir. 2006)) (internal quotation mark omitted); accord Lutaaya v. Mukasey, 535 F.3d 63, 70 (1st Cir. 2008); Segran v. Mukasey, 511 F.3d 1, 6 (1st Cir. 2007); see also Hem v. Mukasey, 514 F.3d 67, 69 (1st Cir. 2008).

In reviewing an adverse credibility determination, we look specifically to whether: (1) "the discrepancies articulated by the IJ and/or the BIA are actually present in the administrative record"; (2) "the discrepancies generate specific and cogent reasons from which to infer that petitioner or his witness provided non-creditworthy testimony"; and (3) "petitioner failed to provide a persuasive explanation for these discrepancies." Cuko, 522 F.3d at 37; accord Zeru v. Gonzales, 503 F.3d 59, 69-70 (1st Cir. 2007); Hoxha, 446 F.3d at 216-17.

The IJ cited a number of discrepancies and omissions that strongly support her finding that Mam and Heng were not credible. First, the IJ stated that Mam and Heng were inconsistent in their testimony about when the alleged rape had occurred. The BIA opinion also highlighted this as a particularly critical discrepancy. This discrepancy is clearly present in the record. On direct examination, Heng testified that the rape occurred "sometime in 2001." When asked to give a more specific date on cross-examination, she responded, "sometime in either September or October," and then immediately added, "November 23, 2001?" The

government's lawyer then asked, "November 23, 2001 is when the incident happened, ma'am?" She responded: "Maybe."

Heng's testimony is contradicted by Mam's statement in his affidavit that the alleged rape occurred in February 2001. The IJ's opinion mistakenly states that Heng gave the date as November 23, 2000, which is about two months off of the date given in Mam's affidavit. The actual date given by Heng in her testimony, November 23, 2001, is in fact further removed from the date given by Mam. Thus, the actual discrepancy between Mam's and Heng's accounts is even greater than that cited by the IJ. Moreover, it is notable that the date Heng eventually, if tentatively, settled on when pressed to give a specific date is similar to a date listed on the affidavit for another event: November 23, 2000 is the date listed in the affidavit for when Mam fled to the countryside alone.

This discrepancy goes to the heart of petitioners' claim.[2] The horrific assertion that Heng was raped by a police officer as a result of her husband's political activity is petitioners' strongest claim for asylum on the basis of

_____

[2] The REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, "abolishes the 'heart of the claim' rule." Cuko, 522 F.3d at 38 n.2; accord Lutaaya, 535 F.3d at 70 n.8; see also Hoxha, 446 F.3d at 216 n.4 (stating that the Act "alters, among other things, the standards governing credibility determinations and the need for corroboration of testimony in asylum cases" (quoting Dhima v. Gonzales, 416 F.3d 92, 95 n.3 (2005)) (internal quotation marks omitted)). However, because petitioners' application pre-dates the effective date of the Act, this change is inapplicable here. See Cuko, 522 F.3d at 38 n.2; Lutaaya, 535 F.3d at 70 n.8.

persecution. That Mam and Heng could not agree on a date, and indeed gave a series of dates spread over a year for when this alleged traumatic event occurred is a specific, cogent reason for inferring a lack of credibility. See Hoxha, 446 F.3d at 217.

In attempting to explain the discrepancy, petitioners argue that expecting that the two of them "would have had a calm detailed discussion" about Heng's rape "make[s] no sense." Not true. Before they testified, years later, they could be expected to get their stories straight. Moreover, whether or not that assertion is credited, the IJ's conclusion rested on no such expectation. Nothing compels the conclusion they did not discuss the alleged rape. Indeed, Heng and Mam had enough of a discussion about the rape to allow Mam to describe it in some detail in his affidavit. Moreover, Heng testified that she fled to the countryside to join Mam after the rape occurred, so it is not unreasonable to assume that she would have described to him the circumstances surrounding her flight or that he would know when it was that she joined him.[3]

---

[3] The argument that Heng's confusion about the date may have stemmed from the emotional strain that must be inherent in attempting to recount the details behind her rape was raised by Mam and Heng's counsel in their appeal before the BIA but was not raised here. Even given this argument, a reasonable factfinder would not be compelled to reach a conclusion contrary to the IJ's, especially given that the IJ observed the demeanor of the witness throughout. See Cuko, 522 F.3d at 38 n.3 ("Even equally competing inferences do not allow us to unsettle the IJ's determination.").

The second material discrepancy found by the IJ, and highlighted by the BIA, concerns the date and length of Mam's hospitalization after the incident with the motorcycle, which Mam attributes to retaliation for his party membership. This discrepancy is present in the record. In Mam's affidavit and testimony, he stated that the incident in which an unidentified car chased him and knocked him to the ground as he drove out from the party office occurred in June 2000, and that he was hospitalized as a result for two weeks. Heng, however, gave a different account. On cross-examination, Heng stated and then reaffirmed that her husband was hospitalized for only two days. She also could not identify the year in which this incident occurred. When asked to give a date, she responded: "1996, 1998. . . . 1996, 1993. Like that. 1996, 1993. Something. I'm not quite sure." As the IJ noted, there is a significant difference between a two-day hospitalization and a two-week hospitalization, and the fact that Mam and Heng gave different accounts as to what occurred and the year in which this occurred goes to the heart of their claims. Petitioners made no attempt to explain this discrepancy, either before the agency or in their petition for review.

The IJ's conclusion is also supported by the fact that Mam and Heng did not provide any corroborating evidence regarding the accident, such as hospital reports, or any indication that they attempted to procure such evidence. See Muñoz-Monsalve v. Mukasey,

551 F.3d 1, 8 (1st Cir. 2008) ("[T]he IJ is warranted in weighing in the balance the existence and availability of corroborating evidence, and the effect of its non-production.").

A third material inconsistency found by the IJ related to Mam's purportedly being blacklisted in Cambodia as a result of his political activities. In his affidavit, Mam claimed he was blacklisted because the police accused him of "being involved in the Cambodian Freedom Fighters"; the affidavit does not provide a date for when this occurred. In his affidavit, Mam also claimed that being blacklisted was one of the things that caused him to "[feel] like [he] could no longer live in Cambodia." In his direct testimony, however, Mam never mentioned being blacklisted, and when asked about it on cross-examination, he provided no further details and said he could not remember in what year this occurred -- only that it "maybe" happened around the time of the elections in 1998. Additionally, Mam said nothing about the Cambodian Freedom Fighters accusation that he claimed caused him to be blacklisted; instead, he said only that "when I stood up and opposed their party, they listed me on the blacklist." Since Mam stated in his affidavit that being blacklisted was one of the things that forced him to leave Cambodia, this discrepancy is central to his claim. Again, petitioners made no effort to provide an alternative explanation.

A fourth material inconsistency discussed by the IJ is that, in his affidavit, Mam claimed that as a result of joining the

Sam Rainsy Party, he "received many death threats [on] several occasions," but that Mam omitted any mention of these death threats from his direct testimony. When asked about this omission on cross-examination, he said only that he "continuously receive[d] death threat[s]" and did not attempt to provide any further elaboration or explanation. Mam's failure to recount in his testimony every detail listed in his affidavit, of course, would not be fatal to his claim in and of itself. See Heng v. Gonzales, 493 F.3d 46, 49 (1st Cir. 2007). But if Mam was actually receiving death threats "continuously," as he claimed, this is hardly a minor detail, and, taken together with the other discrepancies and omissions in the record, the omission supports the IJ's adverse credibility determination. See id.; Pan v. Gonzales, 489 F.3d 80, 86 (1st Cir. 2007) ("Some of these inconsistencies, in isolation, may seem like small potatoes. What counts, however, is that their cumulative effect is great.").

Some of the other inconsistencies found by the IJ are not as strongly supported in the record. However, this is not sufficient to unsettle the agency's determination. Even if we were to discount entirely the IJ's findings as to any inconsistencies regarding Mam's involvement with the election committee, his description of his problems before 1998, and the nature of his knee

injury,[4] the other, significant discrepancies discussed by the IJ and the BIA are more than sufficient to support the adverse credibility finding. Reviewing the record as a whole, we cannot conclude that the IJ was compelled to find petitioners credible. See Segran, 511 F.3d at 6; see also Hoxha v. Mukasey, 256 F. App'x 368, 372-73 (1st Cir. 2007); Jiang v. Gonzáles, 156 F. App'x 336, 340-41 (1st Cir. 2005).

Because Mam and Heng failed to provide credible testimony, they could not meet the burden of proof required to establish their asylum claims. See Hem, 514 F.3d at 73; Melhem v. Gonzales, 500 F.3d 78, 81 (1st Cir. 2007); Dine v. Gonzales, 464 F.3d 89, 93 (1st Cir. 2006). This also means petitioners necessarily could not meet the more stringent burden required for withholding of removal. Sok v. Mukasey, 541 F.3d 43, 47 (1st Cir. 2008); Dine, 464 F.3d at 93. Petitioners made no arguments challenging the agency's denial of their claims under the CAT, either before the BIA or in their petition for review.

The petition for review is denied.

---

[4]     Petitioners devote much of their brief to arguing that the IJ claimed Mam "never mention[ed]" his injured knee when in fact he did so a number of times during his testimony, and that this demonstrated that the IJ had "a prejudicial faulty memory." This is incorrect. The IJ never asserted that Mam failed to mention his injured knee; rather, she acknowledged that Mam said he had an injured knee but emphasized that he had failed to specify the type of injury this was.