# United States Court of Appeals

## For the First Circuit

No. 09-1273

JIN WENG,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Torruella and Stahl, Circuit Judges.

William P. Joyce and Joyce & Associates P.C. were on brief for the petitioner.
Terri J. Scadron, Assistant Director, Office of Immigration Litigation, and Tony West, Assistant Attorney General, Civil Division, were on brief for the respondent.

January 27, 2010

**LYNCH**, **Chief Judge**.  Jin Weng, a native and citizen of China, petitions for review of a decision by the Board of Immigration Appeals (BIA) affirming an immigration judge's (IJ) decision denying her petition for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).  The IJ and BIA rejected Weng's claim that she has faced and will likely face religious persecution in China as an adherent of Zun Wang, a banned religion in China.  The IJ found Weng was not credible because her testimony was inconsistent with her earlier sworn testimony, determining particularly that, in her earlier statements, she did not mention religion but said she was fleeing China and feared returning there because of poverty and other nonreligious reasons.

The IJ did not explicitly separate his findings on the asylum claims about past persecution and likely future persecution.  But we and the BIA have inferred from his reasoning that he found that Weng was not credible about the past persecution she claimed to have suffered in China or her alleged fear of future persecution in China, and that she was not credible in her assertion that she left China and fears returning because of religious persecution.  Although the IJ discussed some but not all of the documentary evidence Weng introduced to support her claim of past religious persecution, the remaining evidence would not compel a factfinder to conclude that Weng had suffered past religious persecution or

feared future persecution or that she was credible about her reasons for leaving China. We deny the petition for review.

I.

Weng entered the United States from Mexico at Calexico, California, on July 16, 2004. At the border, Department of Homeland Security (DHS) officials found her in the trunk of a car and detained her. An immigration officer then interviewed Weng under oath through a Mandarin translator. Weng was informed in her own language that she needed to tell the truth and, especially, to tell the officer if she feared leaving the United States and returning home. The officer assured Weng she could "speak privately and confidentially to another officer about [her] fear or concern."

Weng acknowledged that she understood her rights. She told the officer that the reasons she had come to the United States and feared returning to China were that she and her family were poor and she needed work. She said she feared she might be harmed in China, but she could not name anyone who would harm her. When asked whether she had anything else to say, Weng replied no.

Later that day, an asylum officer conducted a credible-fear interview with Weng, again through a Mandarin interpreter and again under oath. At the outset, Weng signed a page that detailed her rights. It read, in part,

> Please feel comfortable telling me why you
> fear harm. U.S. law has strict rules to

> prevent the disclosure of what you tell me
> today about the reason why you fear harm. The
> information you tell me about the reasons for
> your fear will not be disclosed to your
> government, except in exceptional
> circumstances. The statements you make today
> may be used in deciding your claim and in any
> future immigration proceedings.

This recitation was translated for her at the time.

After this urging to be truthful and this warning that what she said would be used to decide her claim, Weng gave the asylum officer several reasons she was entering the United States, none of which involved religious persecution. She said that her family did not want her and had sent her to live with others so her parents could try to have a boy. She again said her family was poor and that she would have a hard time finding a job in China because of her "social status." Weng said she had heard that "America is a country of human rights," and she believed the American government treated its people better than the Chinese government. She also noted that she opposed the Chinese government's one-child policy.

Weng only identified one specific reason why she might be harmed in China. She reported that her mother had obtained a high-interest loan to pay for her to leave China and the lenders might harm her mother if the loan were not repaid. Weng also indicated that she had never been arrested.

On July 28, 2004, DHS issued Weng a Notice to Appear. Weng conceded removability and admitted the notice's factual

allegations.  Weng filed an application for asylum, withholding of removal, and protection under the CAT on December 15, 2004.  In her application, Weng claimed, for the first time, that she was fleeing religious persecution in China for practicing Zun Wang, a banned religion in China.

After several changes in venue due to Weng moving, Weng appeared for her hearing before an immigration judge in Boston, Massachusetts, on May 17, 2007.  In her affidavit and oral testimony, Weng claimed that she was raised by an aunt[1] who practiced Zun Wang and brought Weng to ceremonies.  Weng testified that she formally joined the religion at sixteen years old and attended services regularly.  She said that the government warned Zun Wang followers to stop practicing their religion in November 2003.  That same month, her parents allegedly received a notice from village officials warning Weng to stop practicing Zun Wang.

Weng testified that she was arrested on November 14, 2003, after five uniformed police officers broke down the door to a Zun Wang prayer meeting.  Weng said that officers interrogated her for thirty minutes, slapped her, and made her sign a statement without letting her read it.  She testified she was held for two days over a weekend, during which she was given inadequate food and

---

[1]     Weng testified that, when she was four years old, her parents sent Weng and her sister to live with relatives so her parents could try to have a son.  She said that the Chinese government forced her mother to undergo a tubal ligation after Weng's mother gave birth to a son.

kept in a cold cell containing only a light blanket. Her family bailed Weng out for 800 Yuan on Sunday, November 16.

Weng claimed that she continued practicing Zun Wang, even though officers told her to stop or face jail. She testified that her family helped her come to the United States after she escaped a second arrest attempt in May 2004. Weng mentioned none of this in her earlier interviews with DHS officers.

Weng submitted several documents supporting her religious persecution claim on May 3, 2007. At the beginning of her hearing on May 17, the IJ marked and admitted the documents as "Group Exhibit 10." These exhibits included State Department country reports from 2003 and 2006 that detailed how China has mistreated practitioners of minority religions. Weng offered letters from her sister and uncle, apparently prepared in 2007, that described Weng's alleged 2003 citation and warning; her sister attached pictures of Zun Wang ritual objects she was hiding in her own home. Weng also provided, for the first time, a translated copy of a village notice, dated November 13, 2003, accusing her of refusing to stop practicing Zun Wang. It ordered her to appear for investigation and reeducation or face "severe penalties." Finally, she submitted in 2007 a translated copy of a bail receipt for 800

Yuan, dated November 17, 2003,[2] charging her with "[d]isturbing social order & promoting superstition."

On cross examination Weng admitted that, contrary to her current testimony, she had earlier told immigration officers that (1) she had never been arrested and (2) she had left China because she was poor; nor did she (3) mention religion or say she left because of religion. Despite her prior statements that her family was poor, Weng also conceded that her family runs a seafood business and is in a "pretty good" financial position for their area. Weng explained that she had not mentioned religious persecution or her arrest when she was first interviewed because she was afraid the Chinese government would learn about her statements. She claimed she only felt safe to report the persecution after speaking with a lawyer. She did not explain her inconsistent statements about her family's financial situation.

After the evidence, the IJ suspended the hearing, saying he wished to consider the evidence. That same day he delivered an oral opinion finding Weng removable and denying her petition. He began by correctly observing that Weng had to prove she had suffered past persecution or had a well-founded fear of future persecution because of, inter alia, religion. He added, also correctly, that proof of past persecution created a presumption

---

[2]     Weng did not explain the apparent inconsistency between the date on this receipt and her testimony that her family bailed her out of jail on Sunday, November 16.

-7-

that a petitioner has a well-founded fear of future persecution. Then, the IJ stated that the country reports and Weng's testimony "certainly [would have] established a well-founded fear of persecution" based on her religious beliefs, "if indeed, she were a credible witness." He did not explicitly mention the documents such as the letters, the notice, or the bail receipt.

But the IJ determined Weng was not credible because her prior, sworn interview statements were inconsistent in several respects with her hearing testimony. He noted that the credible-fear worksheet showed that she "was advised in great detail" about her rights. Yet in two interviews with two different officers Weng did not mention religious persecution; she said she had come to the United States to escape poverty. When asked whether she had anything to add after her first interview, Weng said no. In her credible-fear interview, Weng also said that she came because of America's human-rights record and that she feared harm only from lenders who had given her mother a high-interest loan.

The IJ considered Weng's argument that she answered the officers as she did because she feared she would be deported because of her religion. The IJ responded, "I must say that I do not, for one moment, believe that." As to her "fear," he noted that Weng was with "experienced snakeheads," and snakeheads usually advised people that probably their only chance for staying in the United States was to claim asylum. He concluded that she was "an

intelligent and articulate young woman who certainly should have known that if she were escaping from religious persecution, to say so when she was given an opportunity at a credible fear interview." The IJ added, "It is inconceivable to me that a young woman of this level of intelligence would not have stated that she was running away from China because she was persecuted on account of her religious beliefs, if such were the case." Not only did Weng never mention her religious beliefs, but the only reason she gave for fearing to return to China was the possibility that snakeheads might retaliate if they were not paid.

The IJ found Weng's prior inconsistent statements went to the heart of her application and denied her application for asylum, withholding of removal, and CAT protection. This denial, together with the IJ's recitation of the standard of review, necessarily means the IJ inherently decided that Weng had not met her burden to show past persecution or a likelihood of future persecution. Although his opinion mentioned only the country reports Weng submitted, presumably Weng's inconsistent statements led the IJ to disbelieve her testimony of past persecution and find her other evidence insufficient. The IJ also expressly held that she had not met her burden to prove withholding of removal or eligibility for protection under the CAT.

The BIA affirmed the IJ and denied Weng's application for asylum, withholding of removal, and protection under the CAT on

January 29, 2009. It ruled that the IJ relied on specific, cogent reasons for finding her not credible; specifically, Weng's statements in July 2004 to DHS that she was coming to the United States for work and to escape poverty contradicted her asylum application and testimony that she was fleeing religious persecution. The BIA concluded these inconsistencies undermined Weng's credibility and went to the heart of her claim.

The BIA also noted that the IJ had considered and rejected Weng's argument that she had not mentioned religious persecution earlier because she feared the Chinese government would learn of her asylum application opposing one of its policies. The BIA observed that, before her credible-fear interview, Weng was advised in Mandarin that the United States could not report her statements. It also pointed out that Weng had felt comfortable noting her opposition to the Chinese government's family-planning policies.

The BIA held that Weng had not "met her burden of proof for asylum under section 208 of the Immigration and Nationality Act," a conclusion that necessarily incorporated findings that Weng had failed to prove past persecution or a likelihood of future persecution. It also ruled that she had not met her burden to show eligibility for withholding of removal or protection under the CAT.

Weng petitioned this court for review.

II.

When "the BIA adopted and affirmed the IJ's ruling" but also "discussed some of the bases for the IJ's opinion, we review both the IJ's and BIA's opinions." Cuko v. Mukasey, 522 F.3d 32, 37 (1st Cir. 2008)(internal quotation marks omitted). We also review the IJ's credibility determination when the BIA" adopted it. Id.

Petitioners for asylum have the burden to prove they are "refugee[s]," 8 U.S.C. § 1158(b)(1)(B)(i), who are people "unable or unwilling" to return to their home countries "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion," id. § 1101(a)(42)(A).[3] Weng's brief attacks the ground the BIA and IJ gave for rejecting her petition: that her testimony lacked credibility.

We review adverse credibility determinations for substantial evidence. Mam v. Holder, 566 F.3d 280, 283 (1st Cir. 2009). We will not disturb an adverse-credibility finding "unless [a] petitioner[] can show the record evidence, considered as a

---

[3] Although the IJ and BIA did not rely on this point, we note that applicants for asylum must show, not just that they suffered past persecution on a protected ground, but that they are unable or unwilling to return to their home country for that reason. See 8 C.F.R. § 208.13(b)(1) (defining a past-persecution "refugee" as someone who has "suffered persecution in the past . . . on account of race, religion, nationality, membership in a particular social group, or political opinion, and is unable or unwilling to return to . . . that country owing to such persecution") (emphasis added).

-11-

whole, 'would compel a reasonable factfinder to make a contrary determination.'" Id. (quoting Cuko, 522 F.3d at 37).

There is no real dispute that the discrepancies the BIA or IJ relied on are "actually present in the administrative record" and "generate specific and cogent reasons" to infer the petitioner's testimony was not credible. Ru Xiu Chen v. Holder, 579 F.3d 73, 77 (1st Cir. 2009). There is also no serious dispute that these discrepancies went to the heart of Weng's claim and were "not merely peripheral or trivial matters," a legal requirement before the REAL ID Act's effective date. See Bebri v. Mukasey, 545 F.3d 47, 50 & n.1 (1st Cir. 2008).

This case turns on the IJ's finding--and the BIA's affirmance--that the petitioner's explanation was not credible and so she failed to give "a persuasive explanation for these discrepancies." Ru Xiu Chen, 579 F.3d at 77 (quoting Mam, 566 F.3d at 283). Our review, as always, is whether substantial evidence supports the IJ's determination that Weng had not met her burden of proof. See id.

Weng argues that the IJ's decision to reject her explanation was based on conjecture and speculation and not supported by substantial evidence. She admits that she gave inconsistent statements during her credible-fear and earlier interviews. But she says that her explanation--that she feared she would be deported and was not aware DHS would keep her statements

confidential--was convincing and consistent with the record; consequently, the IJ should not have rejected it.

We still apply the substantial-evidence test. Even if the explanation for an inconsistency is on its face reasonable and consistent, that does not mean the explanation is true or that the IJ must accept it. It also does not mean that an IJ cannot evaluate a superficially reasonable explanation by weighing its plausibility or assessing an applicant's credibility. The IJ is responsible for weighing these factors and reaching a credibility determination, which we then must affirm as long as "the IJ has given reasoned consideration to the evidence and has provided a cogent explanation for his finding." Muñoz-Monsalve v. Mukasey, 551 F.3d 1, 5 (1st Cir. 2008).

Weng's petition essentially asks this court to reevaluate anew the IJ's rejection of her explanation, which we cannot do. The IJ gave a cogent explanation for rejecting Weng's explanation that was supported by substantial evidence in the record,[4] not mere speculation. Weng's testimony that she was unaware that her answers would be held confidential is directly contradicted by her

---

[4] Weng argues that the BIA engaged in impermissible factfinding by noting that Weng, despite claiming she was afraid to criticize the Chinese government, said she opposed its family planning policies during her credible-fear interview. The BIA was not finding new facts; it was pointing to further support for the IJ's finding that Weng was not credible because her statements were inconsistent. See 8 C.F.R. § 1003.1(d)(3)(i) (permitting the BIA to review an IJ's credibility finding for clear error). In any event, the BIA did not rely only on this fact to affirm the IJ.

credible-fear worksheet and the information both immigration officers provided. Weng was given Chinese translations of all statements and documents and affirmed that she understood her rights.

Weng's argument that the IJ and BIA ignored documentary evidence she provided fails for similar reasons. We can infer that the IJ reviewed the documents Weng submitted but found they did not independently establish her case[5] or overcome his doubts about her credibility. The IJ did not make a credibility finding until after he marked all her documents, heard her testimony, and retired to evaluate the evidence. He discussed two of those documents--the country reports--in his decision.

We can also infer that the IJ rejected these documents, which did not add new facts but merely supported Weng's testimony, for the same reasons he chose not to credit her testimony and the

---

[5]     We cannot find, given our standard of review, that the documents themselves would compel a finding of persecution, especially in the absence of credible testimony on Weng's part. That burden is "heavy," and petitioners must show "more than harassment or spasmodic mistreatment by a totalitarian regime." Guzman v. INS, 327 F.3d 11, 15 (1st Cir. 2003); see, e.g., Bocova v. Gonzales, 412 F.3d 257, 263 (1st Cir. 2005) (affirming the BIA's conclusion that two beatings "over an eight-year span, occurring more than twenty-five months apart" were not "persecution"); Guzman, 327 F.3d at 15-16 (affirming the BIA's holding that the petitioner "f[ell] well short of establishing 'past persecution'" when he suffered "superficial physical harm" after being kidnapped, held for three hours, and beaten). Weng's documents purporting to show she was warned not to practice Zun Wang and that she was fined, or even arrested, for doing so are not such persuasive evidence of persecution that a reasonable factfinder would be compelled to reach a conclusion opposite to the IJ's.

-14-

country reports. Those reasons are sufficiently clear for us to review and, as we explained, had a basis in the record. See Pan v. Gonzales, 489 F.3d 80, 87 (1st Cir. 2007) ("Although an IJ may not simply ignore substantial testimonial and documentary proof, she need not discuss ad nauseam every piece of evidence. So long as the IJ has given reasoned consideration to the evidence as a whole, made supportable findings, and adequately explained her reasoning, no more is exigible.") (internal citation omitted).

Substantial evidence supports the IJ's finding that Weng did not meet her burden on any of the forms of relief she sought. The underlying issue before the IJ was whether she had shown past persecution or likely future persecution for her religious beliefs. As the BIA and IJ noted, despite being told to tell DHS officers why she feared returning to China, Weng repeatedly failed to mention religious persecution and offered a host of alternative explanations. The IJ fairly weighed this inconsistency against Weng's explanation for why she lied on several points and found her explanation unpersuasive. We cannot say the record compels a contrary conclusion.

Weng makes a final, incorrect argument. She accuses the BIA of a procedural error: conflating the REAL ID Act's requirement that discrepant testimony go to the heart of the claim with the requirement that the IJ's findings not rest on conjecture and speculation. The BIA did no such thing. It rejected Weng's

-15-

argument that the IJ relied on conjecture and speculation by pointing to facts in the record supporting the IJ's determination. It also noted the inconsistencies the IJ relied on went to the heart of Weng's claim.

## III.

The petition for review is <u>denied</u>.