# Matter of R-A-U-, Applicant

*Decided by Board February 27, 2026*[1]

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Based on inconsistencies and omissions in the record, the Immigration Judge clearly erred in concluding the applicant presented a credible claim for asylum.

FOR THE APPLICANT: Mary J. Mazur, Esquire, Boston, Massachusetts

FOR THE DEPARTMENT OF HOMELAND SECURITY: Patrick K. Ddiba, Assistant Chief Counsel

BEFORE: Board Panel: HUNSUCKER, GOODWIN, and GEMOETS, Appellate Immigration Judges.

HUNSUCKER, Appellate Immigration Judge:

The applicant is a native and citizen of Morocco. The Department of Homeland Security ("DHS") appeals the Immigration Judge's May 23, 2025, decision granting the applicant's application for asylum pursuant to section 208(b)(1)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158(b)(1)(A) (2024).[2] The record will be remanded.

The applicant bases his asylum application on his claim that he is a member of the proposed particular social group of "bisexual male[s] of Morocco." The applicant testified that he was arrested in Morocco when he was 14 years old because his father had participated in an antimonarch

---

[1] Pursuant to Order No. 6743-2026, dated April 21, 2026, the Acting Attorney General designated the Board's decision in *Matter of R-A-U-* (BIA Feb. 27, 2026), as precedent in all proceedings involving the same issue or issues. *See* 8 C.F.R. § 1003.1(g)(3) (2026). Editorial changes have been made consistent with the designation of the case as a precedent.

[2] Because the Immigration Judge granted the applicant's asylum application, the Immigration Judge did not rule on the applicant's application for withholding of removal pursuant to section 241(b)(3)(A) of the INA, 8 U.S.C. § 1231(b)(3)(A) (2024), and his request for protection pursuant to the regulations implementing the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994) ("CAT"). 8 C.F.R. § 1208.16(c) (2026); 8 C.F.R. § 1208.18(a) (2020).

protest.  He said that the police pressured his father to stop his activism or they would charge the applicant with being a member of the LGBT community.  The applicant testified that he left Morocco when he was 15 years old and went to Turkey to play soccer.  He said that he subsequently entered Germany illegally and applied for asylum there.  The applicant testified that, when he applied for asylum, he was given an asylum stamp, a monthly stipend, and allowed to remain in Germany during the pendency of his application.  According to the applicant, over the next 4 years, he went to many other European countries, but he was repeatedly returned to Germany because he had a pending asylum application there.[3]  He testified that his asylum application was ultimately denied in Germany.  He then illegally stowed away on a ship bound for the United States where he was discovered and ultimately put into asylum-only proceedings.

On May 23, 2025, the Immigration Judge granted the applicant's asylum application, finding that he testified credibly, suffered past persecution in Morocco, and has a well-founded fear of persecution in Morocco because he is a bisexual male.  The Immigration Judge also found that the applicant was not firmly resettled in Germany prior to traveling to the United States and that the applicant merited asylum as a matter of discretion.  DHS argues on appeal that the Immigration Judge erred by finding that the applicant presented credible testimony in support of his claim.  This Board must defer to the Immigration Judge's factual findings, including findings as to the credibility of testimony, unless they are clearly erroneous.  *See* 8 C.F.R. § 1003.1(d)(3)(i) (2026); *see also Weng v. Holder*, 593 F.3d 66, 71–72 (1st Cir. 2010); *Matter of S-H-,* 23 I&N Dec. 462 (BIA 2002).

DHS argues that the applicant's testimony before the Immigration Judge was inconsistent.  We conclude that the Immigration Judge's finding that the applicant testified credibly is clearly erroneous.  *See* INA § 208(b)(1)(B)(iii), 8 U.S.C. § 1158(b)(1)(B)(iii); *see also Matter of R-S-H-*, 23 I&N Dec. 629, 637 (BIA 2003) (stating that a "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" (citation omitted)).  For example, the applicant testified that he was arrested in Morocco when he was 14 years old because his father participated in an antimonarch protest.  The applicant testified that he was detained for 7 days and badly beaten by the police.  The applicant also told a social worker that

---

[3]    The applicant testified that he was returned to Germany from other European countries approximately 21 times.

he was badly beaten by several police officers in Morocco "so much that [he] couldn't breathe."

In his first written affidavit, however, the applicant did not mention that he was arrested or beaten by the police in Morocco. In his second written affidavit, he did not mention being beaten by the police. Moreover, the applicant's sister testified that she did not notice any injuries to the applicant when he was released from police custody. She also testified that the applicant did not seek medical treatment upon his release. In addition, the applicant submitted a written email from his father, who did not claim that the applicant was beaten by the police. His father also did not mention that he himself participated in a demonstration in Morocco.

Further, the applicant testified that he did not want to return to Morocco because he was afraid of being harmed and prosecuted because of his sexual identity. He also testified, however, that he is afraid of returning to Morocco because he would be forced to serve his "mandatory military service."

Notably, despite the applicant's testimony that he: (1) applied for asylum in Germany, (2) lived in Germany for 1 year with a monthly stipend and an asylum stamp, (3) was returned to Germany on 21 occasions from other European countries because he had a pending asylum application there, and (4) received a written denial of his asylum application, he submitted no documentation of this denial or of his proceedings in Germany.

Moreover, the applicant's written affidavits are not consistent. In his first affidavit, the applicant stated only that he applied for asylum in Germany but that he wanted to go to Canada. In his second affidavit, he said that his asylum application was denied possibly because he gave the "German police a fake name because I was terrified of being returned home. I told them my name was Reda Naoufel. They had no way to confirm my identity because I did not have a passport or identification card." In addition, before the Immigration Judge, the applicant testified that his German asylum caseworker was racist and aggressive and told him that "he had to go back" to Morocco. He subsequently said that he was given a written denial letter.

On July 27, 2024, the applicant was interviewed by United States immigration officials on board the vessel where he was a stowaway. The applicant told the officials that his parents were no longer living. When asked about this statement, he testified that he was combative and lied because he thought the officer was being racist. The applicant also told the officials that he had never been given a passport from any country and that he had

previously lived in Cairo, Libya, and Tunisia. He also did not tell the officials that he had been arrested in Morocco.

Before the Immigration Judge, the applicant acknowledged that he omitted from his asylum application that he used a false name in Germany. When asked about this omission, he testified that he did not see where it was asked on the application. The applicant also gave inconsistent testimony regarding whether his asylum application allowed him to work while in Germany. Further, the Immigration Judge found that the applicant "engaged in certain illegal conduct, not carrying his passport and not presenting his passport after destroying that passport in Turkey, and potentially giving a false name or withholding his true identity, and evading removal from Germany after learning that his asylum application was ultimately denied."

On this evidentiary record, the Immigration Judge clearly erred in concluding the applicant presented a credible claim for asylum. In granting asylum, the Immigration Judge specifically did not address the applicant's alternative applications for withholding of removal and protection under the CAT. Thus, we will remand for the Immigration Judge to adjudicate those applications. On remand, the Immigration Judge may further consider the applicant's credibility if additional evidence merits such reconsideration. The Immigration Judge should also address whether the applicant was firmly resettled in Germany, and, if appropriate, alternatively address whether the applicant demonstrated eligibility for relief or protection apart from his noncredible testimony. In remanding, we express no opinion as to the ultimate outcome of the proceedings. Accordingly, the following orders will be entered.

**ORDER:** The Immigration Judge's decision dated May 23, 2025, is reversed.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with this opinion and the entry of a new decision.