# United States Court of Appeals
## For the First Circuit

No. 15-2529

PIERRE RICHARD LEGAL,

Petitioner,

v.

LORETTA E. LYNCH,
United States Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Howard, Chief Judge,
Torruella and Lynch, Circuit Judges.

Carlos E. Estrada on brief for petitioner.
Benjamin C. Mizer, Principal Deputy Assistant Attorney
General, Civil Division, Cindy S. Ferrier, Assistant Director,
Tracie N. Jones, Trial Attorney, Office of Immigration Litigation,
Civil Division, U.S. Department of Justice, on brief for
respondent.

September 23, 2016

**HOWARD**, <u>Chief Judge</u>.  Petitioner Pierre Richard Legal, a native and citizen of Haiti, asks us to review a Board of Immigration Appeals ("BIA") order denying his claims for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT").  The BIA upheld an immigration judge's ("IJ") finding that Legal's testimony was not credible and, thus, that he was unable to establish eligibility for relief. After careful consideration of the briefs and the record, we deny the petition.

## I.

Legal entered the United States on August 9, 2011 without a valid entry document and applied for admission.  The next day, a Department of Homeland Security ("DHS") officer interviewed Legal about his application for admission.  During the interview, Legal said that he understood the interpreter and the questions asked and that his statements were true and complete.

Legal initially claimed that he departed Haiti for Mexico on April 20, 2010 to avoid further persecution due to his political opinion.  He explained that he was a "simple member" of the "Plateform Organisation des Mines" and that members of the opposing political party, Lavalas, had harassed him.  Legal stated that he had received approximately seven telephonic death threats,

- 2 -

which began a week before his April 20th departure, but that he was never physically harmed.

Although Legal had earlier told the DHS officer that he obtained a visa in May 2010 to travel to Mexico in order to avoid persecution, later in the interview he claimed that he obtained the visa in March 2010 in order to "leave the country and find a job and bring my family." The DHS officer clarified, "[T]he purpose of you getting a Mexican visa was not to avoid persecution like you stated previously?" Legal replied that "the purpose was to leave the country and find work." He admitted that he remained in Mexico for sixteen months and then attempted to enter the United States because he "was not doing well in Mexico to take care of his family."

The DHS commenced removal proceedings against Legal by filing a Notice to Appear ("NTA") charging him as removable pursuant to Immigration and Nationality Act § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I). In response, Legal sought asylum, withholding of removal, and protection under the CAT.

In his asylum application, Legal claimed that he had suffered past persecution and feared future persecution because of his work as a grassroots leader in the Konvansyon Inite Demokratik ("KID"), a Haitian political party. He stated that on April 14, 2002, eight years before he left Haiti, he endured a beating at the hands of five Lavalas members as a result of his involvement

- 3 -

in the KID. He described a further incident two years later in which, while he was driving for work, fifteen masked men stole his car, shot at him, and left him on the street. In his application, Legal indicated that he began receiving threatening phone calls in March 2010. He claimed he left Haiti to avoid any further mistreatment but acknowledged that he left Mexico because he was not making enough money to support his family.

On March 3, 2014, Legal appeared with counsel before an IJ for his merits hearing. Legal testified as the only witness, and his testimony was generally consistent with his asylum application. Legal contended that he went to Mexico to save his life and give security to his family; he denied that he went to Mexico to look for work. Legal admitted that he did not tell the DHS officer anything about the KID. He claimed, however, that he did not remember being questioned about any political organizations, nor did he remember denying that he was physically harmed in Haiti. He also stated that he may not have understood the interview questions because he was under stress at the time, and the interpreter was available only by telephone.

Following the hearing, the IJ denied Legal's claims for relief. The IJ premised his decision on a finding that Legal's testimony lacked credibility. The IJ detected a bevy of discrepancies between Legal's sworn statement to the DHS officer on the one hand and his written application for asylum,

- 4 -

supplemental affidavit, and hearing testimony on the other. The IJ gave more weight to the sworn statement, since it was prepared immediately upon Legal's apprehension, whereas "his asylum application was prepared much more recently and after the respondent had time to come up with the story which he tells today."

The BIA adopted and affirmed the IJ's decision, emphasizing that Legal provided inconsistent statements with respect to the political organization with which he was affiliated and the extent to which he participated, as well as whether he was physically harmed as a result. The BIA also agreed with the IJ that Legal's sworn statement to the DHS officer was entitled to more weight than his subsequent representations and that Legal failed to demonstrate past persecution or fear of future persecution on account of a protected ground.

This timely petition for review followed.

## II.

Legal challenges the BIA's upholding of the IJ's adverse credibility determination and resulting denial of his claims for relief. Where, as here, the BIA adopts the IJ's decision and reasoning, we review both decisions under the deferential substantial evidence standard. Conde Cuatzo v. Lynch, 796 F.3d 153, 156 (1st Cir. 2015). Under this standard, we will not reverse

"unless 'the record would compel a reasonable adjudicator to reach a contrary determination.'" Id. (quoting Ying Jin Lin v. Holder, 561 F.3d 68, 72 (1st Cir. 2009)).

In order to qualify for asylum, an applicant must establish either past persecution or a well-founded fear of future persecution if repatriated, on account of one of five enumerated grounds, including political opinion. See 8 U.S.C. § 1101(a)(42)(A). Although an asylum applicant's own testimony may be adequate to meet this burden, an IJ may discount or disregard testimony if the IJ reasonably deems it to be "speculative or unworthy of credence." Bebri v. Mukasey, 545 F.3d 47, 50 (1st Cir. 2008) (decided under the prior "heart of the matter" rule). Thus, "an adverse credibility determination can prove fatal" to an asylum claim. Id. (quoting Pan v. Gonzales, 489 F.3d 80, 86 (1st Cir. 2007)). Further, a factfinder may base a credibility determination on inconsistencies, inaccuracies, or falsehoods "without regard to whether [any such inconsistency, inaccuracy, or falsehood] goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii).[1]

Here, ample evidence supports the IJ's finding that Legal's various statements were inconsistent. E.g., Conde Cuatzo,

_____

[1] Because Legal's application postdates the enactment of the REAL ID Act, Pub.L. 109-13, 119 Stat. 302 (2005), the credibility definition at issue here is subject to that Act.

796 F.3d at 155-156 (applying the substantial evidence standard to an adverse credibility determination).  In his sworn statement to the DHS officer — the one closest in time to the alleged beating — Legal stated that he was never physically harmed in Haiti.  Additionally, he stated that his reason for going to Mexico was to "find work" and failed to mention his participation in the KID.  It was only in Legal's application for asylum and his merits-hearing testimony, after the initiation of removal proceedings, that he claimed he was a member of the KID, had been beaten by Lavalas supporters, had the car he was driving stolen at gunpoint, and had traveled to Mexico to save his life.  The record thus supports the IJ's conclusion that Legal's various statements were "directly at odds."

The mere fact that a detail is omitted from a DHS interview but is included in subsequent submissions does not necessarily warrant an adverse credibility finding.  Cf. Kartasheva v. Holder, 582 F.3d 96, 106 (1st Cir. 2009) ("Standing alone, the omission of [two fines] during the asylum interview did not render the petitioner incredible.").  Yet, the inconsistencies noted by the IJ are of a type that create strong doubts about the veracity of Legal's story.  Cf. Conde Cuatzo, 796 F.3d at 156 (upholding an IJ's adverse credibility finding when the IJ cited inconsistencies between petitioner's sworn statements).  Simply stated, Legal "has told different tales at different times."

- 7 -

Munoz-Monsalve v. Mukasey, 551 F.3d 1, 8 (1st Cir. 2008). Under such circumstances, an IJ is entitled to "sharply discount" a petitioner's testimony. Id. Although Legal attempted to explain these omissions, the IJ was not obligated to credit his explanations. Rivas-Mira v. Holder, 556 F.3d 1, 5 (1st Cir. 2009).

"Once we accept the [IJ's] adverse credibility determination—as we must—the petitioner's case collapses." Id. at 6. Without Legal's own testimony, the record does not show that he was targeted on account of his political beliefs. Accordingly, we conclude that substantial evidence supports the agency's asylum determination. As Legal seeks remand of only his asylum claim, he has waived his withholding of removal and CAT claims. In any event, the same credibility problem undermines those claims, and we would reach the same conclusion as to them.

Consequently, we deny his petition for review.